**Dr. Alfred MILBERT, Appellant,**

v.

**Dr. C. Everett KOOP, U.S. Surgeon General, et al.**

No. 86–5600.

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 1987.

Decided Oct. 6, 1987.

Mark A. Packman, with whom Judith E. Schaeffer was on the brief, for appellant. Amy G. Applegate also entered an appearance, for appellant.

Jeffrey Hunter Moon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., were on the brief, for appellees.

Before EDWARDS and SILBERMAN *, Circuit Judges, and

* Judge Silberman took no part in the preparation of this opinion and has recused himself in con-

nection with this case.

KAUFMAN [**], Senior United States District Judge for the District of Maryland.

Opinion for the Court filed by Senior District Judge FRANK A. KAUFMAN.

FRANK A. KAUFMAN, Senior District Judge:

Appellant, Dr. Alfred N. Milbert, has been a member of the Commissioned Corps of the United States Public Health Service (PHS) since 1976. In 1981 the PHS assigned Milbert to the Food and Drug Administration (FDA) to work as a toxicologist. In 1982 Milbert began suffering from a variety of physical ailments allegedly caused by his exposure to airborne contaminants at his work site.[1] After Milbert was advised by his physicians to avoid further exposure to those contaminants, he requested his immediate supervisors in the FDA to move him to a new office. However, according to Milbert, those supervisors failed to grant that request.[2] Milbert further contends that because he so sought relief concerning his problems with the airborne contaminants, his supervisors retaliated against him by (1) failing to promote him, and (2) giving him a negative work performance appraisal in the October 25, 1987 Commissioned Officer's Effectiveness Report (COER).

After Milbert had fully but unsuccessfully exhausted his administrative remedies concerning his claim of handicap discrimination, Milbert timely filed this case in the United States District Court for the District of Columbia, seeking relief solely under section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Milbert's said complaint was dismissed by the district court, with prejudice, on the ground that members of the Commissioned Corps of the PHS are not entitled to the protections of the Rehabilitation Act. The within appeal followed.

[**] Of the United States District Court for the District of Maryland, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Milbert's complaint in the within case was dismissed on the pleadings by the district court. Accordingly, Milbert's factual allegations are deemed to be true for purposes of this appeal.

## THE REHABILITATION ACT OF 1973 AS AMENDED IN 1978

Congress enacted the Rehabilitation Act in 1973 to aid handicapped individuals and in so doing, in section 501 of that Act, "established the principle that (a) the federal government, (b) federal contractors, and (c) recipients of federal funds cannot discriminate against the handicapped." *Prewitt v. United States Postal Service*, 662 F.2d 292, 301 (5th Cir.1981). Section 504 provides that "no otherwise qualified individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving financial assistance." 29 U.S.C. § 794. Section 505(a)(2) makes applicable to section 504 the "remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(2).

In *Prewitt*, Judge Tate, in the course of reviewing the legislative history of the Act, commented:

Under the original 1973 Rehabilitation Act, a private cause of action founded on handicap discrimination was not recognized upon section 501 as against a federal government employer; the literal statutory wording merely required federal agencies to *submit* affirmative actions plans. However, due to differences in statutory wording, all courts that considered the issue found that section 504 established a private cause of action for handicapped persons subjected to discrimination by recipients of federal funds, while the federal courts split on the question whether the same was true under section 503 for individuals subjected to handicap discrimination by federal contractors.

In 1978, the Rehabilitation Act was amended to provide a private cause of

*Shear v. National Rifle Association*, 606 F.2d 1251, 1253 (D.C.Cir.1979).

2. Milbert states that he was subsequently assigned to another office after he had spoken with senior supervisory officials in the FDA.

action in favor of persons subjected to handicap discrimination by the federal government employing agencies. In the House, an amendment was adopted and ultimately enacted by the Congress that extended section 504's proscription against handicap discrimination to 'any program or activity conducted by an Executive agency or by the United States Postal Service;' the legislative history, as well as the judicial interpretations, fully recognized that a private right of action had been created by section 504.

The Senate, at the same time, added a new section 505(a)(1) to the Rehabilitation Act, which created a private right of action under section 501.

*Prewitt,* 662 F.2d at 302–03 (footnotes omitted) (emphasis in original).

Section 505(a) provides as follows:

The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

29 U.S.C. § 794a(a)(1, 2).

Thus, Title VII and its exhaustion requirements were incorporated by the Congress in 1978 into the remedy procedures of section 501. By way of contrast, section 504 incorporates Title VI—not Title VII—procedures. Title VI, which relates to the cutting off of funding of federal programs when certain prescribed discriminatory conduct occurs, does not contain exhaustion requirements similar to those of Title VII.

Ultimately, both Houses of Congress passed the 1978 amendments to the Rehabilitation Act of 1973, seemingly without recognizing that the 1978 amendments contained two different approaches in the creation of a right of action by a federal government employee against his agency. Commenting in that regard, Judge Tate wrote in *Prewitt:*

In summary, the 1978 amendments to the Rehabilitation Act 1) established a private right of action, subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII of the Civil Rights Act, in favor of section 501 claimants, and 2) extended section 504's proscription against handicap employment discrimination to cover the activities of the federal government itself.

Thus, by its 1978 amendments to the Rehabilitation Act, Congress clearly recognized both in section 501 and in section 504 that individuals now have a private cause of action to obtain relief for handicap discrimination on the part of the federal government and its agencies. The amendments to section 504 were simply the House's answer to the same problem that the Senate saw fit to resolve by strengthening section 501. The joint House-Senate conference committee could have chosen to eliminate the partial overlap between the two provisions, but instead the conference committee, and subsequently Congress as a whole, chose to pass both provisions, despite the overlap. 'When there are two acts upon the same subject, the rule is to give effect to both if possible.' *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). By this same principle, in order to give effect to *both* the House and the Senate 1978 amendments finally enacted, we must read the

exhaustion of administrative remedies requirement of section 501 into the private remedy recognized by both section 501 and section 504 for federal government handicap discrimination.

*Prewitt,* 662 F.2d at 304 (emphasis in original).

Since 1978, the right of a federal governmental employee to sue his employing agency under the Rehabilitation Act has been unquestioned. *See, e.g., Morgan v. United States Postal Service,* 798 F.2d 1162 (8th Cir.1986); *Boyd v. United States Postal Service,* 752 F.2d 410 (9th Cir.1985); *Shirey v. Devine,* 670 F.2d 1188 (D.C.Cir. 1982). But there exists a split among the courts as to whether such a suit may be brought under section 504 as well as under section 501. *Compare Morgan v. United States Postal Service,* 798 F.2d 1162, 1165 (8th Cir.1986) and cases stated thereat; *Smith v. United States Postal Service,* 742 F.2d 257, 259–60 (6th Cir.1984); *Prewitt v. United States Postal Service,* 662 F.2d 292, 304 (5th Cir.1981), answering the question in the affirmative, *with Boyd v. United States Postal Service,* 752 F.2d 410, 413 (9th Cir.1985); *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1321 (7th Cir.1984), indicating a negative response to that question. However, those courts which have taken the approach that a private cause of action exists under either section 501 or section 504 or both, have read into section 504 the requi: ment of exhaustion of administrative remedies in the manner prescribed by section 505(a)(1) and thus by Title VII.

The court below seemingly did not decide the question of whether Milbert can proceed under section 504 since it denied relief on the basis of the "military exception" discussed *infra.* On appeal, while maintaining his right to proceed herein under section 504, Milbert has alternatively asked this Court to permit him, on remand, to amend his complaint to seek relief under section 501. In view of the underlying philosophy of Fed.R.Civ.P. 15,[3] which favors the grant of petitions to amend, and in view of our disagreement with the court

below with regard to the "military exception," *see* the discussion *infra* at pp. 358–359, there would appear no reason why we should not grant Milbert's said alternative request to amend his complaint to enable him to go forward under section 501. In that context, we need not resolve the question, which has divided the circuits, whether a person such as Milbert can proceed under section 504 as well as under section 501. We would, however, strongly suggest that in the future, plaintiffs such as Milbert seek relief under section 501 rather than under section 504.

APPLICABILITY OF THE REHABILITATION ACT
TO EMPLOYEES OF PHS

Title 42 U.S.C. § 2000e–16 (referred to in section 501) provides:

(a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in *military departments* as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriate funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

(Emphasis added).

The question has arisen in other cases as to whether uniformed members of the military service are "employees ... in military departments" as those words are used in Title VII. A number of courts have answered that question in the negative. In *Johnson v. Alexander,* 572 F.2d 1219 (8th Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct.

---

**3.** *See Hanson v. Hoffmann,* 628 F.2d 42, 53 n. 11

(D.C.Cir.1980).

579, 58 L.Ed.2d 658 (1978), Judge Henley wrote:

> From our consideration of the record and of the briefs and arguments it is clear to us that at the heart of plaintiff's claim is the premise that the relationship between the government and a uniformed member of the Army, Navy, Marine Corps, Air Force or Coast Guard is that of employer-employee, and that an applicant for enlistment in one of those armed services is an applicant for 'employment' and should have his application judged by Title VII standards. We cannot accept that premise and accordingly cannot accept counsels' conclusions based thereon.

> While military service possesses some of the characteristics of ordinary civilian employment, it differs materially from such employment in a number of respects that immediately spring to mind,[4] and the peculiar status of uniformed personnel of our armed forces has frequently been recognized by the courts. *See,* for example, the following cases which, among others, were cited by the district court in its discussion of the question of whether the case presented a justiciable controversy: *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). *See also* the discussion of the status of an enlistee in the Army that appears in the rather old case of *In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

[4] An enlisted man in the Army, for example, is not free to quit his 'job,' nor is the Army free to fire him from his employment. Additionally, the soldier is subject not only to military discipline but also to military law.

*Johnson,* 572 F.2d at 1223–24. Similarly, in *Gonzalez v. Department of Army,* 718 F.2d 926 (9th Cir.1983), Judge Fletcher concluded that the 1972 amendments to Title

**4.** *But see* Judge Weinstein's opposite views in *Hill v. Berkman,* 635 F.Supp. 1228 (E.D.N.Y. 1986).

**5.** It is to be noted, however, that the PHS is a "uniformed service." *See* 5 U.S.C. § 2101(3); 10

VII, 42 U.S.C. § 2000e–16 (allowing federal employees to sue their employing federal agency) were "not intended to extend Title VII coverage to enlisted and commissioned members of the armed forces in active service." *Gonzalez,* 718 F.2d at 928.[4]

This Circuit has not yet determined, and in the within case, need not determine the question of whether members of the armed forces may bring suit under Title VII. Assuming, however, *arguendo* only, that members of the armed forces have no such right, the question here at issue is whether commissioned officers of the PHS are, as the court below concluded, analogously excepted from the protections of Title VII and, because of Title VII's incorporation into the Rehabilitation Act as amended in 1978, also from the protections of that latter Act. 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e–16.

In *Salazar v. Heckler,* 787 F.2d 527 (10th Cir.1986), the Tenth Circuit concluded that the case law excepting members of the military from Title VII is equally applicable to commissioned officers of the PHS. *Id.* at 533. In *Salazar,* Judge Bohanon reviewed the many similarities between the commissioned officers of the PHS and members of the armed forces. *Salazar,* 787 F.2d at 530–31. However, there are also many material differences between commissioned officers of the PHS and members of the armed forces, differences which, in our view, make inapplicable the stated and implied rationales for the "military exception" relied upon by those courts which have excluded active members of the armed forces from the protection of Title VII. Those differences include:

(1) The PHS is not defined as one of the "armed forces." *See* 10 U.S.C. § 101(4); 37 U.S.C. § 101(4).[5]

(2) The PHS is an agency of the Department of Health and Human Services. 42 U.S.C. § 202. It is neither a com-

U.S.C. § 1072(1); 37 U.S.C. § 101(3); 42 U.S.C. § 201(p). However, the wearing of a uniform does not necessarily mean that the wearer is engaged in military-type duty.

ponent of any armed force nor is its primary mission the assistance of any armed force. Rather, the Congress has assigned to it the task of generally aiding and improving the public health.

(3) Unlike most members of the armed forces, a commissioned officer of the PHS is free unilaterally to terminate his status as a commissioned officer of the PHS. *See* Officers Handbook for Officers of the Commissioned Corps (CCPM Pamphlet 10–B) at 7–8. ("Except during a period of war or national emergency when the commissioned corps has been declared a military service, an officer may resign his commission at any time.")

(4) The PHS is not a "Military Service" until the President so declares, by executive order, in time of war or national emergency. 42 U.S.C. § 217.

(5) Officers of the PHS are not subject to the Code of Military Justice unless the President so declares pursuant to the provisions of 42 U.S.C. § 217.

While the issue is not free from debate, we are of the view that these differences significantly and sufficiently distinguish members of the PHS from members of the armed forces so as to cause us to conclude that the "military exception" to Title VII and therefore to the Rehabilitation Act does not apply to a commissioned officer of the PHS and bar him from bringing suit under the Rehabilitation Act. Therefore, Milbert's within suit is not barred because he is employed by the PHS.

Accordingly, we hereby remand the instant case to the district court for further proceedings during which Milbert shall be permitted to amend his complaint to assert his right to relief under section 501.

*Reversed and remanded.*