Frederick D. JUDD, Appellant

v.

James H. BILLINGTON, Librarian of Congress.

No. 87–5380.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1988.

Decided Dec. 20, 1988.

Amy E. Wind, with whom Irving Kator and Douglas B. Huron, Washington, D.C., were on the brief, for appellant.

Daniel Bensing, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, Asst. U.S. Atty., Lana Kay Jones, and Martin F. O'Donoghue, Jr., Washington, D.C., were on the brief, for appellee.

Before: MIKVA, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Frederick D. Judd ("appellant") protests his discharge from the Library of Congress on the grounds that the Library violated the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq.* (1982 & Supp.1988), section 201 of the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 ("Alcohol Act"), 42 U.S.C. § 290dd–1 (Supp.1988), and certain Office of Personnel Management ("OPM") and Library of Congress regulations when it fired him. The district court granted summary judgment for the Library of Congress, and Judd appeals. We affirm on the ground that Judd failed to state a claim on which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

## I. BACKGROUND

Frederick Judd was a long-time employee of the Library of Congress who was warned, disciplined and eventually discharged for habitually disappearing from work for hours at a time without leave. Judd claims that he was and is an alcoholic and that his supervisors knew that he abused alcohol and that alcoholism was the reason for his absences. Judd, by his own account, generally came to work sober, worked half a day, left for lunch and frequently did not return. Judd claims that he failed to return because he was drinking. On a few occasions, he returned to work under the influence. Judd's supervisors did not confront him with the possibility that he might be an alcoholic nor did

Judd raise the issue with them. The Library of Congress maintained a Health Services Office which provides evaluation and counseling to employees with alcohol problems and, when necessary, refers them to outside facilities. Judd's supervisors repeatedly referred Judd to Health Services and encouraged him to seek its assistance if a health problem was a cause of his misconduct. They also provided Health Services with a copy of a written memorandum to Judd, and the Health Services alcoholism and drug abuse counselor made several attempts to contact Judd to discuss counseling.

Judd protested his discharge through the Library of Congress' review procedures but an arbitrator upheld the Library's decision. Judd then sought judicial review. The court below granted summary judgment for the Library of Congress on the grounds that: (1) Judd had not exhausted his administrative remedies because he had not filed an Equal Employment Opportunity complaint; and (2) he had failed to make a sufficient showing that the Library knew or had reason to know that he was an alcoholic to create a genuine issue of material fact. We do not reach these questions because we find that Judd's claims are insufficient as a matter of law.

## II. DISCUSSION

### A. *Rehabilitation Act*

■ The Rehabilitation Act, as originally enacted, did not apply to Library of Congress employees. The two sections germane to federal employment were limited in scope to the executive branch. *See* 29 U.S.C. § 791(b) ("Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch"); 29 U.S.C. § 794 ("any program or activity conducted by any Executive agency or by the United States Post Office"). The Library of Congress, as part of the legislative branch, was not included. *See* 2 U.S.C. § 171(1).

Appellant contends that a 1978 amendment expanded the scope of the Rehabilita-

tion Act to include employees of the Library of Congress. The amendment in question extends a private right of action to employees who have complained under section 501 of the Rehabilitation Act and are aggrieved by the outcome. *See* 29 U.S.C. § 794a. Rather than construct a new remedial scheme tailored to the Rehabilitation Act, Congress incorporated the comprehensive scheme provided in Title VII of the Civil Rights Act of 1964 by making the "remedies, procedures, and rights set forth in ... 42 U.S.C. § 2000e-16" available to employees unhappy with the disposition of their Rehabilitation Act complaints. *See* 29 U.S.C. § 794a. Appellant argues that, since the incorporated section expressly includes employees of the Library of Congress, *see* 42 U.S.C. § 2000e-16(a), the amendment created a right of action under the Rehabilitation Act for employees of the Library of Congress as one of the rights set forth in Title VII that was incorporated into the Rehabilitation Act.

The patent flaw in this reasoning is that it helps itself to only part of the provision in question. The rights that Congress incorporated are available only with respect to a complaint under section 791. Appellant has no complaint under section 791 as that section applies only to employees in the executive branch. *See* 29 U.S.C. § 791(b).

Appellant's reliance on *Milbert v. Koop,* 830 F.2d 354 (D.C.Cir.1987), is misplaced. In that case, this court found that a member of the Commissioned Corps of the United States Public Health Service, a division of the Department of Health and Human Services, did have a right of action under the Rehabilitation Act. The issue was whether his position fell within the military exception that, some courts have held, limits Title VII's scope. Section 791 of the Rehabilitation Act does not itself grant aggrieved employees a right of action. If the plaintiff in *Milbert* was not entitled to a right of action under Title VII, then incorporation of Title VII could not have given him a right of action under the Rehabilitation Act. Nothing in that decision suggests that incorporation of Title VII rights

expanded the Rehabilitation Act to cover new categories of employees. We find that the Rehabilitation Act provides no rights to appellant on which he can base a claim.

### B. *Alcohol Act*

■ Nor can appellant ground a claim in section 201 of the Alcohol Act. The Alcohol Act, *inter alia,* directs the Secretary of Health and Human Services to foster programs in federal agencies to prevent and treat alcoholism among employees. *See* 42 U.S.C. § 290dd-1(a). Two provisions address agency conduct with respect to federal employees. One prohibits federal agencies from turning down an applicant for federal employment or firing a current employee for prior alcoholism unless the employment is in one of several designated sensitive areas. *See* 42 U.S.C. § 290dd-1(b). The second explains that agencies are free to discharge alcoholic employees who are not performing their jobs satisfactorily. *See* 42 U.S.C. § 290dd-1(c) ("This section shall not be construed to prohibit the dismissal from employment of a Federal civilian employee who cannot properly function in his employment.").

Judd has not alleged that he was a prior alcoholic when he was discharged. Rather, he has alleged that alcoholism was the cause of the recurring misconduct for which he was dismissed. This court, accepting Judd's version of the facts, is unable to find a provision of the Act that the Library of Congress could have violated. Indeed, section 290dd-1(c) specifically authorizes the Library's action. Thus, we find it unnecessary to reach the question of whether Judd has an implied right of action under the Alcohol Act because we find that, even if he did, he has no rights under it to pursue.

### C. *OPM and Library of Congress Regulations*

■ Appellant's last effort is equally fruitless. Neither of the alleged violations of regulations complained of by appellant is legally sufficient. Appellant's main complaint is that, in violation of an OPM re-

quirement, he was not confronted with a firm choice between accepting treatment and accepting the consequences for unsatisfactory performance. Appellant's error is in regarding the provision of a "firm choice" as a requirement.

OPM did issue a booklet in which the subject of supervisors' providing alcoholic employees a firm choice was discussed. *See* Federal Personnel Management Supplement 792-2, Alcoholism and Drug Abuse Programs, at S2-2(a)(5) (1980). Appellant does not claim, as indeed he cannot, that the OPM publication is binding on the Library of Congress *ex proprio vigore*. The OPM-issued supplement was neither published in the Federal Register for notice and comment nor codified in the Code of Federal Regulations. That it was intended to be precatory, not mandatory, is underscored by its introduction which describes its purpose as providing "guidance" to agencies and departments in establishing their own programs. *Id.* at 1. Even the "firm choice" provision relied on by appellant merely says "supervisors should" provide such a choice, not that they "shall" or "must." *Id.* at S2-2(a).

Appellant's argument is that Library of Congress Regulation 2018-3 made the provisions of the OPM publication binding on the Library. This argument cannot withstand scrutiny. The Library's regulation does cite the OPM-issued supplement, but as authority for the Library's establishment of its own drug and alcohol counseling program. Under the heading "Authority," the regulation states: "The Special Counseling and Health Assistance Program is the Library's instrument for carrying out the provisions of Public Law 91-616 and Public Law 92-255 *as outlined in* FPM Supplement 792-2, Alcoholism and Drug Abuse Programs; FPM Letter 792-8, Federal Civilian Employee Alcoholism and Drug Abuse Program: Confidentiality of Client Records; and FPM Letter 792-9, Employee Counseling Services Program." Library of Congress Regulation 2018-3 at § 2 (1983) (emphasis added). Appellant cannot suggest that the Library is describing its hitherto nonexistent program "as outlined in FPM Supplement 792-2" be-

cause the Supplement precedes its program. The Library is describing the statutes, which did precede the OPM publications, "as outlined in" the Supplement and other publications. The most plausible reading of this phrase is that the only legal obligation that the Library undertook, in developing its new program, was to comply with the two statutes. But even if we were to read the phrase to mean that the Library's interpretation of the statutes is identical to OPM's, such a declaration would not bind the Library to any specific requirements because OPM did not interpret the statutes as mandating its guidelines. To the contrary, OPM explained that the guidelines were "purposely broad to permit development of programs by each department and agency that are most likely to provide effective rehabilitation opportunities...." FPM Supp. 792-2 at 1.

Appellant also complains that the Library of Congress failed to follow Library of Congress Regulation 2018-3 because Judd's supervisor did not discuss with him the possibility that he was an alcoholic. This claim fails because the regulation cannot be read as requiring the supervisor to do so. Indeed, to the extent that the regulation directs supervisor behavior, it counsels the opposite. Section 5(C) provides that, if it appears that the failure of an employee to meet job requirements is attributable to a health problem, the employee should be referred to the Health Services Office and the supervisor should discuss the matter with the Health Services Office and provide it with a copy of any written memorandum. Library of Congress Regulation 2018-3, at § 5(C). Section 5(C) at no point directs supervisors to discuss the health problem with the employee. Section 7(F) directs supervisors "as a general rule" not to discuss the possibility of alcohol, drug or emotional problems with an employee unless an employee requests such a discussion or does not appear to be in full control of his faculties. Library of Congress Regulation 2018-3, at § 7(F). Appellant does not represent that either of these triggering conditions occurred.

In any case, such a representation would not serve to avoid dismissal as the pertinent sections of the Library of Congress' regulation are merely hortatory. Section 5 is phrased in terms of what supervisors *should* do, rather than words expressive of a requirement. Library of Congress Regulation 2018–3, at § 5(C). Section 7(F) is one of a number of "guidelines" provided to supervisors confronted with the deteriorating performance of an employee. Library of Congress Regulation 2018–3, at § 7.

### III. CONCLUSION

The Library of Congress' discharge of Frederick D. Judd has been thoroughly examined. As a federal employee, Judd was protected by a comprehensive system of procedural and substantive provisions including progressive discipline and a right to arbitration. Unhappy with the results, Judd has sought yet another forum. But judicial review is not available to address all dissatisfactions. Judd's failure to find any law on which to base his grievance removes his predicament from our domain. Accordingly, the order of the district court dismissing Judd's complaint is

AFFIRMED.