# NOAA Corps Eligibility for Professional Liability Insurance Costs Reimbursement

Members of the NOAA Commissioned Corps may constitute qualified employees eligible for professional liability insurance cost reimbursement under a federal appropriations statute, if they otherwise satisfy the statutory definition for "law enforcement officer," "supervisor," or "management official."

January 19, 2001

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

This responds to the Department of Commerce's letter of May 15, 2000, requesting our opinion as to whether members of the National Oceanic and Atmospheric Administration's ("NOAA") Commissioned Corps ("Corps") constitute "qualified employees" eligible for reimbursement for professional liability insurance costs authorized by the Treasury and General Government Appropriations Act, 2000, Pub. L. No. 106-58, 113 Stat. 430, 477 (1999). *See* Letter for Randolph Moss, Acting Assistant Attorney General, Office of Legal Counsel, from Andrew J. Pincus, General Counsel, Department of Commerce (May 15, 2000) ("DOC Letter"). We conclude that NOAA Corps members who otherwise satisfy the statutory definitions for law enforcement officers, supervisors, or management officials constitute "qualified employees" who are eligible for such reimbursement. While we conclude that being a member of the uniformed services as defined in 5 U.S.C. § 2103(3) does not preclude eligibility for this benefit, we do not reach the application of this statute to the Armed Forces as defined in 5 U.S.C. § 2101(2).

## I.

In 1996, as part of the Omnibus Consolidated Appropriations Act for Fiscal Year 1997, Congress enacted legislation authorizing the reimbursement of "qualified employee[s]" of the government for up to one-half the costs incurred by such employees for professional liability insurance. Treasury, Postal Service, and General Government Appropriations Act, 1997, Pub. L. No. 104-208, div. A, sec. 101(f), § 636(a), 110 Stat. 3009, 3009-314, 3009-363 (1996) ("Treasury Act").[1] As

---

[1] For brevity and clarity, we will sometimes refer to the reimbursement provisions in section 636 of the Treasury Act, as amended, as the "Reimbursement Law" or "the statute."

Editor's Note: For the book edition of this memorandum opinion, this footnote was moved forward and some naming conventions and citations were adjusted to make the presentation of sources more precise.

subsequently amended—including an amendment making reimbursement mandatory rather than permissive—the statute now provides in relevant part:

> Notwithstanding any other provision of law, amounts appropriated by this Act (or any other Act for fiscal year 1997 or any fiscal year thereafter) for salaries and expenses shall be used to reimburse any qualified employee for not to exceed one-half the costs incurred by such employee for professional liability insurance.

*Id*. § 636(a) (as amended by Treasury and General Government Appropriations Act, 2000, Pub. L. No. 106-58, § 642(a), 113 Stat. 430, 477 (1999)). These provisions were not enacted in the form of an amendment or addition to title 5, U.S. Code, although their text is set out as an uncodified note under subchapter IV ("Miscellaneous Allowances") of chapter 59 of title 5.

The statute provides that a "'qualified employee' means an agency employee whose position is that of—(1) a law enforcement officer; or (2) a supervisor or management official." Treasury Act § 636(b). It defines the term "agency" to mean an "Executive agency" as defined by 5 U.S.C. § 105 (1994); "any agency or court in the Judicial Branch"; or "any agency of the Legislative Branch of Government including any office or committee of the Senate or the House of Representatives." Treasury Act § 636(c)(1) (as amended by Treasury and General Government Appropriations Act, 1999, Pub. L. No. 105-277, div. A, sec. 101(h), § 644(1), 112 Stat. 2681, 2681-480, 2681-526 (1998)). The basic term "employee," however, is not separately defined under the statute.

Your inquiry presents the question whether members of the NOAA Commissioned Corps would constitute "qualified employee[s]" under the foregoing statute if they otherwise fall within the covered work categories (i.e., law enforcement officers, supervisors, or management officials).

The NOAA Corps, which succeeded to the authorities and responsibilities previously held in turn by the officers of the Coast and Geodetic Survey and the Environmental Science Services Administration, *see* 33 U.S.C.A. § 851 historical note (West Supp. 2000), consists of roughly 250 to 300 commissioned officers, with a rank system corresponding to that of the Navy. *See id*. § 853a. The duties and functions of the NOAA Corps include operating NOAA's fleet of research and survey vessels and aircraft and extend to such matters as hydrographic and topographic surveys, tide and current observations, geodetic-control surveys, field surveys for aeronautical charts, and other scientific investigations and observations that fall within the responsibility of the Secretary of Commerce and NOAA. *See* 33 U.S.C. § 883a (1994); Department of Commerce, *NOAA Commissioned Corps History*, http://www.noaacorps.noaa.gov/history.html (last visited Oct. 16, 2004). Officers of the NOAA Corps may be transferred to the service of the military departments when the President determines that a sufficient national emergency

exists and that such transfer is in the best interests of the nation. *See* 33 U.S.C. § 855. Like members of the Armed Forces, NOAA Corps officers do not have the freedom to terminate their commissions at any time of their choosing—rather, they are required to tender their resignations at least six months in advance and their approved date of separation is "determined by the [NOAA] Director based on the needs of the Service and may be either sooner or later than the date requested." *See* DOC Letter at 8 n.17; NOAA Corps Regulations § 08202.[2] For purposes of veterans benefits administered by the Secretary of Veterans Affairs, moreover, active service with the NOAA Corps is treated the same as active service with the military services. *See* 33 U.S.C. § 857 (1994). On the other hand, the NOAA Corps is not itself considered a part of the Armed Forces of the United States, which include only the Army, Navy, Air Force, Marine Corps, and Coast Guard. *See* 10 U.S.C. § 101(a)(4) (1994); 5 U.S.C. § 2101(2) (1994). Members of the NOAA Corps, moreover, are not subject to the Uniform Code of Military Justice, except "when assigned to and serving with the armed forces." *See* 10 U.S.C. § 802(a)(8) (1994).

Together with military personnel of the Armed Forces (including the Coast Guard) and members of the Commissioned Corps of the U.S. Public Health Service, members of the NOAA Corps are part of the "uniformed services" of the United States, as distinguished from the civilian "civil service" for various statutory purposes. *See* 5 U.S.C. §§ 2101(1), (3), 2105(a)(1) (1994). Of particular relevance here, members of the uniformed services do not constitute members of the "civil service," and therefore do not constitute "employees" as defined for purposes of the general provisions of title 5, U.S. Code, governing federal government organizations and employees.[3]

Because the Reimbursement Law neither expressly defines the term "employee" nor expressly incorporates by cross-reference the title 5 definition of that term, you have inquired whether the term "qualified employee" as used in the insurance reimbursement provisions encompasses members of the uniformed services, such

---

[2] In this respect, NOAA Corps members may differ from officers of the Public Health Service, the only other uniformed service that is not part of the Armed Forces. *See* DOC Letter at 8 n.17; *Milbert v. Koop*, 830 F.2d 354, 359 (D.C. Cir. 1987) (asserting that, unlike members of the Armed Forces, "a commissioned officer of the PHS is free unilaterally to terminate his status as a commissioned officer of the PHS").

[3] Part III of title 5, U.S. Code, governs "Employees" of the federal government and provides the following definition for "employees" as that term is used in title 5:

> *For the purpose of this title*, "employee," except as otherwise provided by this section or when specifically modified, means an officer and an individual who is . . . appointed in the civil service . . . .

5 U.S.C. § 2105 (emphasis added). That definition would not encompass members of the NOAA Corps because they are members of the uniformed service and, as such, are not "appointed in the civil service." *See* 5 U.S.C. § 2101(1) (defining "civil service" to include all appointive positions in the Executive, Judicial, or Legislative Branches "except positions in the uniformed services").

as members of the NOAA Corps, as well as "civilian" federal employees in the civil service.

After considering a number of alternative approaches to determining the meaning of the term "employee" as used in the Reimbursement Law, the DOC letter to this Office states: "The title 5 definition of 'employee' best fits the broader statute under review and thus should be consulted to determine who is eligible for professional liability insurance reimbursement under Pub. L. No. 104-208." DOC Letter at 10. That interpretation would exclude NOAA Corps members and all other members of the uniformed services from coverage as "qualified employee[s]" eligible for reimbursement under the Reimbursement Law. Acknowledging that this interpretation of the issue "is certainly not free from doubt," however, your office has submitted the question to this Office for our legal opinion. *Id*.

Having considered the views of your department and the other concerned departments,[4] we conclude that members of the NOAA Commissioned Corps who otherwise satisfy the statutory definitions for "law enforcement officers," "supervisors," or "management officials" may constitute "qualified employees" eligible for reimbursement under the Reimbursement Law, even though they are excluded from the definition of "employee" for purposes of title 5, U.S. Code. *See* 5 U.S.C. § 2105.

## II.

In considering whether NOAA Corps members constitute "qualified employee[s]" eligible for coverage under the Reimbursement Law, the Department of Commerce letter places considerable emphasis on the fact that the statute contains no separate definition for the term "employee." *See* DOC Letter at 3. In the absence of such a statutory definition, your office seeks to ascertain the meaning of that term by examining the "broader context" of the enactment, citing the Supreme Court's opinion in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-46 (1997).[5] Reasoning that the subject matter of the Reimbursement Law fits well

---

[4] We invited and received submissions of their views from the Department of Defense (containing the three military departments), the Department of Health and Human Services (containing the U.S. Public Health Service), and the Department of Transportation (containing the U.S. Coast Guard). *See* Letter for Vicki Jackson, Deputy Assistant Attorney General, Office of Legal Counsel, from Douglas A. Dworkin, General Counsel, Department of Defense (Aug. 11, 2000) ("DoD Letter"); Letter for Vicki Jackson, Deputy Assistant Attorney General, Office of Legal Counsel, from Timothy M. White, Associate General Counsel, Department of Health and Human Services (July 14, 2000) ("HHS Letter"); Letter for Vicki Jackson, Deputy Assistant Attorney General, Office of Legal Counsel, from Nancy E. McFadden, General Counsel, Department of Transportation (July 19, 2000) ("DOT Letter").

[5] As the DOC letter also points out, one line of cases has taken the position that "when Congress . . . [uses] the term 'employee' without defining it, we . . . [conclude] that Congress intend[s] to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989) (citations omitted); *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992). As your letter also properly notes,

within the general framework of title 5, U.S. Code, and noting that it expressly incorporates other significant definitions from title 5, the DOC letter suggests that it is therefore appropriate to apply the title 5 definition of "employee" to limit the class of persons who constitute "qualified employee[s]" for purposes of the insurance reimbursement coverage in issue. DOC Letter at 10. Such a limitation would exclude members of the NOAA Corps (as well as all other members of the uniformed services) from coverage because members of the uniformed services are excluded from title 5's definition of "employee." Although this approach is not without merit, we decline to adopt it because we conclude that an individual who otherwise satisfies the Reimbursement Law's express definition of a "qualified employee" (which incorporates the additional definitions of "law enforcement officer," "supervisor," or "management official") need not also satisfy another statute's definition of the term "employee" in order to be eligible for the reimbursement benefit.

## A.

We consider it significant that the Reimbursement Law expressly defines those terms that Congress apparently considered important to define—"qualified employee," "agency," "law enforcement officer," "supervisor," and "management official"—either with original statutory definitions or by express cross-reference to existing definitions in other statutes. The Reimbursement Law defines the term "agency" by express cross-reference to the definition for the term "Executive agency" contained in the general definitions for title 5, U.S. Code (a definition that encompasses all of the executive departments employing uniformed service personnel). *See* 5 U.S.C. § 105. Although not dispositive, Congress's failure to cross-reference expressly title 5's definition of "employee" to govern the Reimbursement Law is noteworthy. Congress's failure to include reference to that title 5 definition in the context of this statute suggests that the statute's express definitions of "qualified employee," "agency," and other defined terms were deemed adequate to describe and limit the class of persons Congress intended to be eligible for the reimbursement benefit.

The critical operative term in the Reimbursement Law for purposes of eligibility for reimbursement is "qualified employee," and the statute does provide a detailed definition of *that* term. If a person is an "agency employee" serving in the position of a "law enforcement officer," "supervisor," or "management official," then he is a "qualified employee" eligible for reimbursement. *See* Treasury Act

---

however, those cases focus on the distinct question of whether a particular individual is an employee as distinguished from an *independent contractor*, rather than whether a particular category of federal government personnel constitutes government "employees" for a particular statutory purpose. DOC Letter at 4.

§ 636(b). Members of the NOAA Corps are employed in the Department of Commerce, which is an "agency" as that term is defined under the Reimbursement Law. *See* 5 U.S.C. §§ 101, 105 (1994). For reasons discussed below, we do not believe that an individual's status as a member of a uniformed service is somehow inherently incompatible with status as an "agency employee."[6] Thus, we think that eligibility under the Reimbursement Law depends on whether that individual satisfies the statutory definition for either "law enforcement officer," "supervisor," or "management official," regardless of whether he or she also conforms to some definition of "employee" contained in another statute, such as 5 U.S.C. § 2105, that is not incorporated by reference in the Reimbursement Law. We believe that these rather detailed statutory provisions can be interpreted on their own terms, without reaching out to other statutes to "borrow" limiting definitions that Congress did not incorporate expressly in this statute.

In reaching this conclusion, we have considered whether service in the uniformed services is in some way inherently incompatible with being considered an "employee" of the United States for purposes of a statute such as the Reimbursement Law. We do not believe that it is. First (leaving aside the express definitions that the Reimbursement Law does include), we see nothing in the Reimbursement Law that would draw or require a distinction between civilian and uniformed government personnel (e.g., if the benefit conferred by the statute were separately or differently provided to uniformed services personnel).[7] *Cf. Feres v. United States*, 340 U.S. 135, 144-45 (1950) (noting the existence of a separate scheme for compensation of injured armed services personnel in holding Federal Tort Claims Act remedy unavailable to serviceman suffering injuries arising in course of or incident to military service). Nor, as discussed below, can we discern any general principle in federal statutory law that would invariably require the conclusion that members of the uniformed services are not "employees" for purposes of particular statutory provisions. Finally, we see no way in which the Reimbursement Law

---

[6] The Department of Defense ("DoD"), while taking no position as to the coverage of NOAA Corps members under the Reimbursement Law, strongly urges that members of the Armed Forces (i.e., the Air Force, Army, Marine Corps, Navy, and Coast Guard, *see* 5 U.S.C. § 2101(2) (1994)) are not covered by the term "employee" as used in statutes directed at the federal workforce in the absence of express language to that effect or another affirmative expression of such congressional intent. *See* DoD Letter at 2. The Department of Transportation, in contrast, does not take the position that Coast Guard personnel, who are also members of the Armed Forces, are excluded from coverage under the Reimbursement Law for that reason. *See* DOT Letter at 1-2. Members of the NOAA Corps and officers of the U.S. Public Health Service are members of the uniformed services, but are not members of the Armed Forces. For this reason, it is unnecessary for us to opine on, and we do not decide, the distinct issue as to whether the Reimbursement Law also covers members of the Armed Forces.

[7] We also note that dictionary definitions of "employee" would not on their face exclude uniformed service personnel. *See, e.g.*, *Black's Law Dictionary* 471 (5th ed. 1979) (defining employee as "[o]ne who works for an employer; a person working for salary or wages."); *The American Heritage Dictionary of the English Language* 428 (New College Ed. 1976) ("A person who works for another in return for financial or other compensation.").

would implicate considerations (such as the unique nature of military discipline, hierarchy, and command arrangements) that sometimes have been found to demand distinctive treatment of members of the uniformed as compared to the civil services.

In construing the Reimbursement Law's use of the term "employee" in the defined term "qualified employee," we have considered whether federal statutory law uniformly and consistently excludes uniformed service members from treatment or coverage as government "employees." We find no such pattern. The Federal Tort Claims Act, for example, includes "members of the military or naval forces of the United States" under its definition of "Employee of the government." 28 U.S.C. § 2671 (1994). Other federal statutes that encompass uniformed services personnel within their definition of "employee" or "employee of the United States" include 5 U.S.C. § 7342(a)(1)(D) (1994) (receipt and handling of foreign gifts and decorations); *id*. § 7905(a)(1) (program to encourage car-pooling by federal employees by, *inter alia*, providing subsidized mass transit passes); *id*. § 8311(1) (provisions governing forfeiture of annuities and retired pay); 22 U.S.C. § 2403(j) (1994) (foreign assistance general provisions); *id*. § 3902(5) (foreign service general provisions); and Pub. L. No. 105-264, § 2, 112 Stat. 2350 (1998) (federal employees' travel charge card). These statutes demonstrate that service in the uniformed services is not always incompatible with the status of an "employee" of the federal government for various statutory purposes, including federal employee benefit provisions.[8]

A number of judicial decisions likewise recognize that uniformed service personnel are not invariably excluded from coverage as "employees" under federal statutes that do not expressly provide for such exclusion. As noted in your letter, for example, two federal courts have held that commissioned officers of the PHS (who, like officers of the NOAA, are members of the uniformed services, but not members of the Armed Forces) are protected employees for purposes of the employment discrimination provisions of Title VII of the Civil Rights Act of 1964. *See Milbert v. Koop*, 830 F.2d at 358-59; *Carlson v. United States Dep't of Health and Human Servs.*, 879 F. Supp. 545, 548 (D. Md. 1995). *But see Salazar v. Heckler*, 787 F.2d 527 (10th Cir. 1986) (holding to the contrary).[9]

---

[8] We note, moreover, that a number of federal statutes using the term "employee" contain provisions expressly *excluding* members of the uniformed services from the scope of that term. *See, e.g.*, 3 U.S.C. § 411(c)(1)(C); 5 U.S.C. § 7103(a)(2)(ii); 5 U.S.C. § 7322(1). It is thus apparent that there is no uniform pattern governing the treatment of uniformed services members under federal statutes using the term "employee"—some statutes expressly include, others expressly exclude, and others are silent. But we do not believe an inference either of inclusion or exclusion of uniformed services employees can necessarily be drawn when a statute, such as the Reimbursement Law, simply uses the term "employee." Whether uniformed services personnel are included in that term would depend on the particular statutory context. *See also Robinson v. Shell Oil*, 519 U.S. at 343.

[9] We note that numerous federal courts of appeals have held that members of the Armed Forces are not protected "employees" for purposes of Title VII of the Civil Rights Act of 1964. *See, e.g.*, *Roper v.*

Further, application of the Reimbursement Law to the uniformed services would not present any special risk of interference with their duties or functions. Some courts, for example, have viewed Title VII as posing the threat of inappropriate interference with the disciplinary and command arrangements that are unique to the military services. *See, e.g.*, *Mier v. Owens*, 57 F.3d 747, 749-51 (9th Cir. 1995); *Roper*, 832 F.2d at 248. The Reimbursement Law, however, does not regulate intra-agency employee relations as Title VII does. Rather, it simply extends a benefit to qualified employees of partial reimbursement for liability insurance should they seek to purchase it.[10] In this respect, this statute is more analogous to miscellaneous employee benefit statutes such as the Federal Employees Clean Air Incentive Act, 5 U.S.C. § 7905, which authorizes subsidized transit passes for commuting federal employees, including those in the uniformed services, *see id.* § 7905(a)(1).

In light of the foregoing considerations, we conclude that if a member of the NOAA Corps otherwise satisfies the Reimbursement Law's requirements for a "qualified employee"—including the functional definitions of "law enforcement officer," "supervisor," or "management official"—it is irrelevant whether he or she also satisfies the definition of "employee" set forth at 5 U.S.C. § 2105. As we read the Reimbursement Law, a NOAA Corps member is employed in an "agency" as defined in 5 U.S.C. § 105—i.e., the Department of Commerce—and thus constitutes a "qualified employee" eligible for reimbursement benefits as long as he or she satisfies the requirements for any one of those three functional categories of service.

## B.

In reaching this conclusion, we acknowledge that the contrary arguments made by DOC are not without merit. As DOC points out in applying the "broader context" approach of *Robinson v. Shell Oil*, the Reimbursement Law could be said to fall within the general body of laws codified in title 5 covering government organization and employees, although Congress did not choose to enact it as an amendment or addition to title 5 that would be incorporated and codified as part of

---

*Dep't of the Army*, 832 F.2d 247, 248 (2d Cir. 1987); *Gonzalez v. Dept. of the Army*, 718 F.2d 926, 928 (9th Cir. 1983); *Johnson v. Alexander*, 572 F.2d 1219, 1223-24 (8th Cir. 1978). Only one federal district court opinion appears to have held to the contrary. *See Hill v. Berkman*, 635 F. Supp. 1228 (E.D.N.Y. 1986).

[10] We note that, because the Reimbursement Law requires reimbursement of only up to *one-half* of the cost of professional liability insurance, it seems unlikely that large numbers of uniformed services personnel who do not have genuine concerns regarding potential liability would be willing to absorb the expense of paying one-half the cost of a policy and thus qualify for the reimbursement benefit. This consideration reduces the likelihood that the applicability of the Reimbursement Law to uniformed services personnel would open the floodgates to substantial unanticipated expenditures under the provision.

the actual text of title 5. *See* DOC Letter at 6. Absent some contrary indication of congressional intent, it may sometimes be appropriate to fill in the definitional gaps of statutes dealing with federal personnel matters by "borrowing" the appropriate title 5 definition on the reasonable assumption that Congress clearly intended that definition to apply and simply considered it unnecessary to make that intention explicit.[11] Here, however, we cannot say that Congress left a manifest definitional "gap" that requires cross-reference to extraneous statutes in order to make the Reimbursement Law "work" or make sense. On the contrary, the Reimbursement Law contains a rather elaborate series of *functionally*-related definitions which appear to set forth adequately the intended reach and limits of the reimbursement benefit. The statutory scheme indicates that Congress intended to extend this benefit to federal personnel working in the described functional categories—law enforcement, supervision, and management—because it considered those categories to be most in need of the liability insurance reimbursement benefit in question. And we find nothing in the statute indicating that Congress viewed persons working in federal law enforcement, supervisory, or management capacities as falling outside the beneficial purposes of the statute merely because they happen to be in the uniformed, rather than the civil, service.[12]

The Reimbursement Law's emphasis on these functional criteria in defining a "qualified employee" distinguishes this matter from a prior opinion where we interpreted the term "employee" as used in an executive order to exclude appointed members of the Regional Fishery Management Councils ("RFM Councils"). *See Applicability of Executive Order No. 12674 to Personnel of Regional Fishery Management Councils*, 17 Op. O.L.C. 150 (1993). The executive order in question set forth ethical standards for Executive Branch employees and defined the term "employee" as "any officer or employee of an agency, including a special Government employee." It further defined the term "agency" by reference to the title 5 definitions of executive departments, Government corporations, and independent establishments in the Executive Branch. *See id.* at 152. We concluded that the term "employee" as used in the executive order was identical in scope and

---

[11] For an example of a court employing this line of reasoning, *see Salazar v. Heckler*, 787 F.2d at 530 (relying on the exclusion of Public Health Service officers from title 5 definition of "employee" in concluding that they are not "employees" for purposes of Title VII); *but cf. Milbert v. Koop*, 830 F.2d at 358-59 (concluding that "military exception" to Title VII and Rehabilitation Act did not preclude Public Health Service officers from bringing suit); *Carlson*, 879 F. Supp. at 548 (to the same effect).

[12] We agree with your assertion that the legislative history on the Reimbursement Law is "scant" and contains "nothing that addresses whether officers of the NOAA Corps may be 'qualified employees.'" DOC Letter at 9. Although the Department of Defense's submission cites certain statements by Senator Warner mentioning various categories of federal employees he hoped would benefit from the 1999 amendment to the Reimbursement Law (making reimbursement mandatory rather than discretionary), and notes that the Senator did not refer to organizations representing the interests of military personnel, *see* DoD Letter at 4-5, these statements simply do not address the question whether uniformed services personnel may constitute "qualified employees" under the statute.

meaning to that term as defined in title 5, *see* 5 U.S.C. § 2105, and that such term excluded appointed members of the RFM Councils. 17 Op. O.L.C. at 153. Among the three considerations on which we relied in reaching this conclusion was that "although the Order does not expressly adopt title 5's definition of an 'employee,' it does adopt that title's definition of an 'agency.'" We further explained that "[w]e think it unlikely that the Order was intended to cover personnel who were employed by 'agencies' within the meaning of title 5 but who were not themselves 'employees' within the same title." *Id*. at 154. We believe the Reimbursement Law is distinguishable from the executive order addressed in our 1993 opinion because the Reimbursement Law's functional definition of "qualified employee" demonstrates that Congress was focusing upon specific criteria (distinct from title 5's definition of "employee") in deciding who would be eligible for the reimbursement benefit—providing functional definitions lacking in the executive order.

We also note that one prominent federal court of appeals decision has expressly declined to "borrow" the title 5 definition of "employee" in construing a statute that explicitly incorporated title 5's definition of "agency" but not its definition of "officer" and "employee." Although the issues resolved in that case are not precisely analogous to that presented here, they nonetheless indicate that close construction of the particular statute under consideration, rather than routine incorporation of the title 5 definition, is a more appropriate approach to statutory interpretation in this context. In *Association of American Physicians and Surgeons, Inc*. *v*. *Clinton*, 997 F.2d 898 (D.C. Cir. 1993), the issue was whether the First Lady constituted a "full-time officer or employee of the federal government" for purposes of a provision of the Federal Advisory Committee Act, 5 U.S.C. app. 2 ("FACA"), exempting from FACA's coverage any committee composed wholly of full-time officers or employees of the federal government. The district court, in holding that the First Lady did not constitute such a federal government employee and that the FACA exemption therefore did not apply, had "quite reasonably turned to title 5 of the U.S. Code to find a definition." 997 F.2d at 903. But the Court of Appeals reversed, holding that the title 5 definitions of "officer" and "employee" do not govern the question whether the First Lady is a federal officer or employee for purposes of FACA. *See id*. at 915. The court instead applied the definition of "officer" in title 1, U.S. Code, in concluding that the First Lady was an "officer" for the purposes in question. In explaining its refusal to adopt the title 5 definitions of officer or employee, the court explained:

> Nevertheless, it is true, as the government insists, that Congress did not adopt explicitly all of Title 5's definitions in FACA. FACA is not part of Title 5, which was enacted six years before FACA's passage, but, instead is only temporarily housed there as an appendix. Typically, when Congress wishes to add a statute to Title 5, it amends the Title. It did not do so when it passed FACA, but at that

time it specifically did adopt certain Title 5 definitions. For example, adjacent to the definition of an advisory committee is FACA's definition of any agency, which incorporates the definition in Title 5: "'agency' has the same meaning as in section 551(1) of title 5, United States Code." But Congress actually deleted from the Senate version of FACA definitions of "officer" and "employee" that paralleled those of sections 2104 and 2105.

*Id*. at 904 (internal citations omitted). The statutory framework addressed by the court in *Clinton* is quite similar in key respects to that presented here—e.g., a statute not codified in title 5 that expressly incorporates title 5's definition of "agency," but omits its definition of "employee"—and the reasons underlying that court's refusal to borrow the title 5 definitions of "employee" and "officer" are consistent with our conclusion on this issue.

## C.

Finally, we have considered whether there is any manifest incongruity in applying the Reimbursement Law's definitions of law enforcement, supervisor, or management personnel to the NOAA Corps that would cast doubt on our interpretation. We conclude that there is not.

To begin with, the statute's definition of "law enforcement officer" provides:

[T]he term "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, prosecution, detention, or supervision of individuals suspected or convicted of offenses against the criminal laws of the United States, including any law enforcement officer under section 8331(20) or 8401(17) of such title 5, or under section 4823 of title 22, United States Code.

Treasury Act § 636(c)(2) (as amended by Treasury and General Government Appropriations Act, 1999, Pub. L. No. 105-277, div. A, sec. 101(h), § 644(2), 112 Stat. 2681, 2681-480, 2681-526 (1998)). This definition, unlike the definitions for "supervisor" and "management official" discussed below, applies only to one who is "an employee." For reasons explained above, however, we do not believe that members of the uniformed services are excluded from the term "employee" for purposes of this particular statute.[13] The statute's language directs attention to whether the government personnel in question are employed by a covered executive agency and perform the functions that Congress had in mind when it

---

[13] As pointed out by the Supreme Court in *Robinson v. Shell Oil* Co., 519 U.S. at 344 n.4, the term "employee" does not have some "intrinsically plain meaning."

authorized reimbursement benefits for professional liability insurance. Insofar as members of the NOAA Commissioned Corps hold positions whose duties are "primarily the investigation, apprehension, prosecution, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States," we conclude that they would be entitled to insurance reimbursement as authorized by the Reimbursement Law.

This Office, however, lacks sufficient factual knowledge of NOAA personnel assignments, or those of the other uniformed services, to assess which particular positions would satisfy the criteria for the "law enforcement officer" classification. Such determinations must be made by the particular employing agency, based on its knowledge of its own personnel and their assignments. *See infra* note 14.

The Reimbursement Law also authorizes reimbursement coverage for qualified employees who are "supervisors." The statute provides that "supervisor" has the same meaning given it by 5 U.S.C. § 7103(a), which provides:

> "[S]upervisor" means an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively rec-ommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment, except that, with respect to any unit which includes firefighters or nurses, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising such authority.

*Id*. § 7103(a)(10). Although this definition does not require that an individual be a title 5 "employee" in order to be a supervisor, it *does* require that a supervisor serve in a position authorizing him or her to perform the enumerated activities with respect to "employees." For purposes of section 7103 and all other sections of chapter 71 of title 5, the term "employee" expressly excludes all members of the uniformed services. *See* 5 U.S.C. § 7103(a)(2)(ii). Accordingly, we conclude that while members of the uniformed services are not excluded from qualifying as supervisors under the Reimbursement Law, only those who exercise at least one of the enumerated supervisory activities with respect to *civilian* employees (i.e., employees who are *not* members of the uniformed services) may qualify for reimbursement as supervisors under the statute. *Cf. Plowman v. U.S. Dept. of the Army*, 698 F. Supp. 627 (E.D. Va. 1988) (Army colonel who supervised civilian employees named as co-defendant in suit for breach of contract and privacy violations).

As with "supervisor[s]," the Reimbursement Law defines "management official" by direct incorporation of the definition of that term provided by 5 U.S.C. § 7103(a), which provides:

> "[M]anagement official" means an individual employed by an agency in a position the duties and responsibilities of which require or authorize the individual to formulate, determine, or influence the policies of the agency.

*Id*. § 7103(a)(11). This definition does not exclude persons who fail to conform to the title 5 definition of "employee," nor does it otherwise exclude personnel of the uniformed services.[14] The application of this definition to particular positions in a uniformed services is a matter to be determined in the first instance by the department employing persons in those positions. We conclude here only that members of the uniformed services who otherwise qualify as "management officials" are not excluded from eligibility for reimbursement because they do not constitute "employees" as that term is defined in 5 U.S.C. § 2105 or other statutory definition of that term.

## III.

For all of the foregoing reasons, we conclude that members of the NOAA Commissioned Corps may constitute "qualified employees" under the Reimbursement Law if they otherwise satisfy the statutory definitions for law enforcement officers, supervisors, or management officials. While we conclude that being a member of the uniformed services as defined in 5 U.S.C. § 2101(3) does not preclude eligibility for this benefit, we do not reach the application of this statute to the Armed Forces as defined in 5 U.S.C. § 2101(2).

VICKI C. JACKSON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[14] Our conclusion that the functional categories for qualified employees under the Reimbursement Law are not incongruous when applied to members of the uniformed services is fortified by the Department of Health and Human Services' statement with regard to commissioned officers of the PHS:

> Commissioned officers do perform duties that fall within the duties describing supervisors and management officials in title 5. Also, some Public Health Service officers are detailed to the Bureau of Prisons, Immigration and Naturalization Service and the Marshals' Service and may be considered "law enforcement officers" for purposes of the provision in question. These officers, in particular, are often sued in their individual capacities.

HHS Letter at 1.