**Michael J. SALAZAR,**
**Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 84–2640.

United States Court of Appeals,
Tenth Circuit.

March 27, 1986.

Sylvian R. Roybal, Denver, Colo., for plaintiff-appellant.

James R. Cage, Asst. U.S. Atty., Denver, Colo., (Robert N. Miller, U.S. Atty., Denver, Colo., and Ronald S. Luedemann, Regional Atty., Jay A. Swope and Mary Lee Bartman, Asst. Regional Attys., Dept. of Health and Human Services, Denver, Colo.,) for defendant-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge and BOHANON, Senior District Judge.*

BOHANON, District Judge.

Michael Salazar appeals from the final order of dismissal entered by the United States District Court for the District of Colorado in this case involving alleged employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as

---

* Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e *et seq.* We affirm.

From 1965 to 1969, Salazar served on active duty as a full grade (0–4) Commissioned Officer in the United States Public Health Service Commissioned Corps (hereinafter "PHS" or "the Corps"). In the midst of this period, in 1967, Salazar was stationed in Alabama but was temporarily assigned to Houston, Texas. While in Houston, Salazar got into a conflict with the Houston Project Officer which Salazar claims involved elements of bias against his ethnic background (Hispanic). Salazar was immediately transferred back to Alabama and shortly thereafter was assigned to a project in Puerto Rico which he preferred to the Houston project at that time. He claims, however, that as a result of the Houston incident certain negative performance evaluations were placed in his personnel file without his knowledge.

In 1969 the project Salazar was working on was terminated and his commission in the Corps was inactivated. He continued, however, as a Reserve Commissioned Officer. In 1975 Salazar, who by then was employed by the Environmental Protection Agency (EPA) in Denver, Colorado, sought, with the approval of his EPA supervisors, to have his commission in the Corps reactivated and to be permanently assigned by PHS to the EPA in Denver. In May of 1976 this request was denied and Salazar upon inquiry determined that the denial was based in part on the negative performance evaluations arising out of the Houston incident some nine years previous.

Eventually Salazar made an employment discrimination complaint to the PHS Office of Equal Employment Opportunity. When his complaint was rejected by that agency, he appealed to the Equal Employment Opportunity Commission (EEOC). The EEOC, without making any findings as to its jurisdiction over the matter, entered a final decision affirming the PHS action. Upon Salazar's request to reopen and reconsider his case, the EEOC entered a decision admitting certain factual errors in its

previous decision but denying the request to reopen on other grounds. Salazar then filed this action in the district court.

The order appealed from incorporates by reference the oral conclusions of the court made at the end of a hearing on the government's Motion to Dismiss or in the Alternative Motion for Summary Judgment. The transcript of that hearing clearly indicates that the court considered the motion as one for summary judgment and that the court granted summary judgment to the government on two bases: 1) The original conduct complained of by Salazar, that is, the placement in his PHS personnel file of negative performance evaluations arising out of unlawful discrimination, occurred in 1967, before the 1972 Amendments which made Title VII applicable to federal employees. The trial court held that the 1972 Amendments could not be retroactively applied to provide Salazar a remedy for the actions in 1967. 2) With respect to Salazar's further claim that the evaluations placed in his personnel file in 1967 caused him additional injury in 1976, the trial court upheld an EEOC finding that Salazar did not bring his problem to the attention of an Equal Employment Opportunity Counselor of the affected agency, PHS, within the time limits prescribed by the governing regulations. Without addressing the correctness of the district court's ruling with regard to these two issues, we affirm its dismissal of Salazar's Title VII claim, albeit on a different basis pressed by the government both before the district court and on appeal.

■ Salazar's complaint asserted 28 U.S.C. § 1343(a)(4) as the basis for exercise of jurisdiction over his claim by the district court. Section 1343(a)(4) provides: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights...." This language does not by itself include any waiver of the sovereign immunity of the United States. *Beale v.*

*Blount,* 461 F.2d 1133 (5th Cir.1972); *Blaze v. Moon,* 440 F.2d 1348 (5th Cir. 1971); *Garcia v. United States,* 538 F.Supp. 814 (S.D.Tex.1982); *Service Arms Co. v. U.S. Treasury Dept. Alcohol, Tobacco and Firearms,* 416 F.Supp. 2 (W.D. Okla.1975). When federal court jurisdiction is invoked pursuant to this statute, we must look to the specific "Act of Congress providing for the protection of civil rights" invoked to determine whether that Act by its terms expresses Congress' consent to suits against the United States by persons in the plaintiff's position.

■ Salazar asserts that his action is authorized by Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Reorganization Plan No. 1 of 1978, 42 U.S.C. §§ 2000e *et seq.* (1982). The portions of that statute pertinent to our discussion are found in § 717, codified at 42 U.S.C. § 2000e–16:

> (a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

> .    .    .    .    .

> (c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

Subsection (c) is a clear expression of consent to suits against the United States by persons covered by subsection (a). *Carreathers v. Alexander,* 587 F.2d 1046, 1051 (10th Cir.1978); *McNutt v. Hills,* 426 F.Supp. 990 (D.D.C.1977); *cf. Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (§ 717 intended by Congress to remedy pre-enactment situation wherein many courts held judicial relief from federal employment discrimination barred by sovereign immunity); Staff of Subcommittee on Labor of Senate Committee on Labor and Public Welfare, 92nd Cong., 2nd Sess., U.S.Code Cong. & Admin. News 1972, p. 2137, Legislative History of Equal Employment Opportunity Act of 1972 (H.R. 1746, PL 92–261) amending Title VII of Civil Rights Act of 1964, 1744 (Comm.Print 1972) (hereinafter *"Senate Comm.Print"*). The government asserts in this suit, however, that § 717 does not apply to positions in the Commissioned Corps of the Public Health Service, and thus does not apply to Salazar with respect to any personnel action affecting him in his capacity as an active member of the commissioned Regular Corps prior to 1970 or with respect to his request to be returned

to active duty from his status as a commissioned officer in the Reserve Corps in 1975.

The government's position has much to commend it.

We note first of all that it has been held that § 717 does not afford protection "to the uniformed personnel of the various armed services." *Johnson v. Alexander*, 572 F.2d 1219, 1224 (8th Cir.1978); *Gonzalez v. Department of Army*, 718 F.2d 926, 929 (9th Cir.1983). These cases observe that although § 717(a) makes specific reference to the "military departments as defined in section 102 of Title 5," these departments include great numbers of civilian employees, as well as uniformed military personnel. The definitions of "military departments" and "armed forces" contained in the United States Code, as well as the legislative history of the 1972 Amendments to Title VII, compel the view "that the term 'military departments' in section 717(a) of Title VII, when read in the context of the statutory definitions to which it refers, can be fairly understood to include only civilian employees of the Army, Navy, and Air Force and not both civilian employees and enlisted personnel...." *Gonzalez*, 718 F.2d at 928; *Johnson v. Alexander*, 572 F.2d at 1224; *see also Johnson v. Hoffman*, 424 F.Supp. 490, 493 (E.D.Mo.1977) (district court opinion reviewed and affirmed in *Johnson v. Alexander*); 5 U.S.C. § 102 (1982); 10 U.S.C. § 101(4) & (7) (1982).

There are numerous instances in the statutory system concerning PHS which support the view that the exception from Title VII's coverage recognized by *Johnson* and *Gonzalez* for members of the armed forces (as opposed to civilian employees of the military departments) extends to commissioned PHS officers as well:

1. PHS is consistently included with the armed forces in statutory definitions of "uniformed services." 5 U.S.C. § 2101(3) (1982); 10 U.S.C. § 1072(1) (1982); 37 U.S.C. § 101(3) (1982); 42 U.S.C. § 201(p) (1982).

2. Commissioned officers in PHS "shall be citizens and shall be appointed without regard to the civil-service laws and compensated without regard to chapter 51 and subchapter III of chapter 53 of Title 5 [the statutes establishing pay rates and systems for employees of federal agencies]." 42 U.S.C. § 204 (1982).

3. Commissioned PHS officers receive pay and allowances according to the same statutory scheme established for the armed forces. 37 U.S.C. §§ 101 *et seq.* (1982).

4. "Commissioned [PHS] officers on active duty and retired officers entitled to retired pay ... shall be permitted to purchase supplies from the Army, Navy, Air Force, and Marine Corps at the same price as is charged officers thereof." 42 U.S.C. § 210(b) (1982).

5. The grades, ranks and titles of commissioned PHS officers are organized in a manner directly corresponding to those in the Army. 42 U.S.C. § 207(a) (1982).

6. In time of war or emergency involving national defense proclaimed by the President, he may declare the PHS to be a military service constituting a branch of the land and navel forces of the United States and subject to the Uniform Code of Military Justice. 42 U.S.C. § 217 (1982).

7. Part III of Title 5, United States Code, dealing generally with employees of the federal government, defines the "civil service" and the "competitive service" to except positions in the uniformed services, including PHS. 5 U.S.C. §§ 2101(1), 2102(a) (1982). Sections 2104(a) and 2105(a) of Title 5 then define "employee" in a manner which excludes anyone not appointed in the civil service. Commissioned PHS officers, therefore, are not "employees" of the federal government.

8. The Civil Service Commission, until replaced by the Office of Personnel Management in 1978, was designed to assist the President in the administration of the competitive service. However, it was never given authority over personnel-type actions in the uniformed servic-

es. *See* 5 U.S.C. §§ 1301 *et seq.* (1976); *Gonzalez*, 718 F.2d at 928 ("it is abundantly clear that the Civil Service Commission was never authorized to review or police discrimination within the armed forces") *citing* S.Rep. No. 969, 95th Cong., 2d Sess. 2–13 *reprinted in* 1978 U.S.Code Cong. & Ad.News 2724–35 (summary of Civil Service Reform Act of 1978 and need for reform). An exception which proves this rule may be found in certain specified positions created in PHS by Congress and expressly included in the classified civil service. 42 U.S.C. § 210(g) (1982). These positions are clearly not those of commissioned PHS officers and the fact that Congress specifically included them in the civil service demonstrates again that body's awareness of the different status and statutory scheme governing commissioned officers. As will be discussed in detail *infra,* the legislative history of § 717 shows that Congress never contemplated applying it to federal personnel actions not governed by the Civil Service Commission, except for the clearly specified case of Library of Congress employees.

Turning now to that legislative history, § 717(a) of the original House version of the Equal Employment Opportunity Act of 1972 (H.R. 1746) specifically referred to "All personnel actions affecting employees or applicants for employment in the *competitive service* (as defined in section 2105 of title 5 of the United States Code)...." *Senate Comm.Print* at 27–28 (emphasis added). This same language was retained in the version of the bill reported out of committee. *Id.* at 116. However, in the course of debate on the bill, the members of the House focused on the enforcement powers given to the Equal Employment Opportunity Commission by the legislation, with the majority coming to favor use of judicial process as opposed to the "cease and desist" powers provided by the Education and Labor Committee's version of H.R. 1746. *Cf.* 1972 U.S.Code Cong. & Ad.News 2137, 2145–47. [hereinafter *"House Report"*]. As a result, a substitute bill was actually enacted which was more in line with the prevailing view on enforcement but which, probably through an oversight, wholly failed to mention federal employees.

In the meantime a bill, S. 2515, parallel in substance to the original version of H.R. 1746 but differing in language, was introduced in the Senate. This bill added a § 717(a) worded much like the version finally enacted.[1] This language is less clear than that in the original House bill in indicating that the only executive branch positions affected are those in the competitive service. However, the introductory remarks of Senator Harrison A. Williams, one of the authors of the bill, indicate that the only federal positions to be affected by the bill were those previously supervised by the Civil Service Commission. *Senate Comm.Print* at 155. It is thus clear that, from the outset in both the House and Senate versions, the bill was not conceived of as applying to non-civil service positions such as those in the commissioned corps of PHS.

In fact the central concern expressed with respect to federal employees in discussion of this bill in both the House and the Senate was a general dissatisfaction with the Civil Service Commission's performance in implementing the national policy of equal employment opportunity expressed in 5 U.S.C. § 7151 (1970) (currently codified at

---

**1.** Sec. 717.(a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, United States Code, in executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code (including employees and applicants for employment who are paid from nonappropriated funds), and in those portions of the government of the District of Columbia, and the legislative and judicial branches of the Federal Government having positions in the competitive service, shall be made free from any discrimination based on race, color, religion, sex, or national origin. *Senate Comm.Print* at 185–186.

§ 7201(b) of the same title) and mandated by Executive Orders 11246 [2] and 11478,[3] and a belief that that Commission had been forced into a nearly automatic conflict of interest. *See House Report* at 2158–60; S.Rep. No. 415, 92nd Cong., 1st Sess. 14–16 (1971) *reprinted in Senate Comm.Print* at 423–425. The original versions of § 717 in both H.R. 1746 and S. 2515 used identical language to respond to this concern by transferring authority for enforcing the federal anti-discrimination policy to the EEOC. During the course of hearings on S. 2515 before the Senate Committee on Labor and Public Welfare, however, the committee became convinced that the Civil Service Commission was "sincere in its dedication to the principles of equal employment opportunity ... and ... has the will and desire to overcome any such conflict of interest." S.Rep. No. 415 at 15; *Senate Comm.Print* at 424. As a result, the bill was amended by the committee to leave enforcement authority with the Civil Service Commission and to strengthen that commission's ability to accomplish the task. It was this substitute provision that eventually was passed by the Senate and, through the manipulations of the conference committee, became part of the version of H.R. 1746 enacted by both houses of Congress.[4]

That Congress did not contemplate that the wording of § 717 finally adopted would apply to any of the uniformed services or, more particularly, to commissioned officers of the PHS, is clearly indicated by the section by section analysis which was prepared by Senator Williams (who also served as chairman of the committee that authored the provision as enacted) and ordered to be printed in the Congressional Record immediately before the Senate finally voted on the bill:

Section 717(a)—This subsection would make clear that all personnel actions of the U.S. Government affecting employees or applicants for employment shall be made free from any discrimination based on race, color, religion, sex, or national origin. All employees of any agency, department, office or commission *having positions in the competitive service* are covered by this section.

*Senate Comm.Print* at 1777 (emphasis added).

The only exception to this blanket statement ever contemplated by Congress dealt with the employees of the Library of Congress. To deal with that case, Senator Cranston offered an amendment, ultimately approved by the Senate, which specifically extended the protections of § 717 to employees of the Library of Congress but granted enforcement authority for those protections to the Librarian of Congress, rather than to the Civil Service Commission. Senator Cranston's comments in support of his amendment demonstrate fully that Congress was aware of the limitations which excluded non-competitive service positions from the scope of the bill before it. Congress' decision to relax those limitations in the case of the Library of Congress creates a strong presumption that it would have taken similar steps with regard to the

**2.** 30 F.R. 12319 (1965) as amended by Ex.Ord. No. 11375, 32 F.R. 14303 (1967); Ex.Ord. No. 11478, 34 F.R. 12985 (1969), *reprinted in* 42 U.S.C. § 2000e app. at 1232 (1976).

**3.** 34 F.R. 12985 (1969), as amended by Ex.Ord. No. 11590, 36 F.R. 7831 (1971), *reprinted in* 42 U.S.C. § 2000e app. at 1236 (1976). It is noteworthy that Ex.Ord. No. 11478 by its terms extends the federal policy of equal opportunity only to *"civilian* employees of the Federal Government," *Id.* (emphasis added) and not to members of the uniformed services. *Cf.* Ex. Ord. No. 10614, 20 F.R. 3699 (1955) *reprinted in*

5 U.S.C. § 5732 app. at 544 (1976) (the term "civilian employees" distinguished from "military personnel" which is defined to mean "members and former and deceased members of the uniformed services" as defined by 37 U.S.C. § 101).

**4.** The enforcement authority created in the Civil Service Commission by the 1972 Act was eventually transferred to the EEOC pursuant to Reorganization Plan No. 1 of 1978, § 3, 43 F.R. 19807, 92 Stat. 3781 *reprinted in* 5 U.S.C. app. at 1155 (1982).

uniformed services, including PHS, had it wanted to.

Mr. President, unfortunately, as drafted, these provisions, which in many respects only codify requirements presently contained in Executive orders and the Constitution, would not apply to employment in the Library of Congress. That is because legislative branch coverage in the bill is limited to "positions in the competitive service." Although this would apply to both the General Accounting Office and the Government Printing Office—which are agencies of the Congress, it would not apply to the Library of Congress which does not have positions in the competitive service and is not generally bound by the Federal personnel manual.

*Senate Comm.Print* at 1723–24.

■ Since, as previously noted, officers in the PHS Commissioned Corps are specifically excluded from the operation of the civil service laws by 42 U.S.C. § 204 and from the competitive service as defined by 5 U.S.C. §§ 2101 *et seq.*, we must hold that these 1972 Amendments did not extend the protections of Title VII of the Civil Rights Act of 1964 to commissioned officers, or to applicants for commissioned officer positions, in the Public Health Service. Section 717 therefore contains no waiver of sovereign immunity applicable to Salazar.

Inasmuch as Salazar has not alleged or shown any other basis for federal jurisdiction, his action must be dismissed.

Affirmed.