# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DURAND HEDIN,

*Plaintiff-Appellant,*

v.

TOMMY G. THOMPSON, SECRETARY,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

*Defendant-Appellee.*

No. 03-1474

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Marvin J. Garbis, Senior District Judge.
(CA-02-2704-MJG)

Argued: December 3, 2003

Decided: January 20, 2004

Before LUTTIG, MOTZ, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Luttig and Judge Duncan joined.

---

## COUNSEL

**ARGUED:** R. Douglas Taylor, Jr., FARBER TAYLOR, L.L.C.,
Rockville, Maryland, for Appellant. Tarra R. DeShields-Minnis,
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Thomas M. DiBiagio, United States Attorney, OFFICE OF

THE UNITED STATES ATTORNEY, Baltimore, Maryland, for
Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this case of first impression a commissioned officer in the Public
Health Service, not detailed to or serving in the Armed Forces, seeks
to bring claims against his employer based on federal antidiscrimina-
tion laws. The district court dismissed the officer's claims. Because
Congress has mandated that Public Health Service officers be treated
for purposes of antidiscrimination laws as officers in active military
service with the Armed Forces, and military officers are exempt from
antidiscrimination laws, we affirm.

I.

Durand Hedin, a pharmacist and Commander in the Commissioned
Corps of the United States Public Health Service ("CCPHS"), works
as a Senior Regulatory Management Officer with the Food and Drug
Administration in the Department of Health and Human Services
("HHS").

After HHS failed on several occasions to promote Hedin, a 52
year-old Caucasian male, and assertedly distributed work to him
unfairly, he filed three timely administrative complaints through
HHS's internal equal employment opportunity program.[1] The acting
Surgeon General issued a final decision finding for HHS on each of
Hedin's complaints.

Hedin then filed this action alleging the same discrimination, but
this time seeking redress under Title VII of the Civil Rights Act,
§ 701 *et seq.*, 42 U.S.C. § 2000e *et seq.* (2000), and the Age Discrimi-

---

[1] The Commissioned Corps Personnel Manual, Subchapter 26.1, Per-
sonnel Instruction 6, sets forth HHS's equal employment opportunity
program for CCPHS officers.

nation in Employment Act of 1967 ("ADEA"), § 2 *et seq.*, 29 U.S.C. § 621 *et seq.* (2000). Specifically, Hedin relies on § 2000e-5(f)(3) and § 2000e-16 of Title VII and § 626(c)(1) and § 633a of the ADEA, which provide that the federal government may not discriminate on the basis of race, sex, or age with regard to "[a]ll personnel actions affecting employees . . . in military departments [and] . . . executive agencies" and which allow the district courts to hear claims arising under these provisions. 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a.[2]

The Government moved to dismiss Hedin's claims on the ground that the district court lacked subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Government contended, and the district court agreed, that, as an officer in the CCPHS, Hedin had no remedies under federal antidiscrimination laws.

Some background explains the basis for the Government's motion and the district court's holding. Although the Supreme Court has never considered the question, every federal appellate court to do so has concluded that uniformed members of the military are not "employees . . . in military departments," and so do not fall within the scope of 42 U.S.C. § 2000e-16; courts have thus created a "military exception" to Title VII. *See, e.g.*, *Randall v. United States*, 95 F.3d 339, 343 (4th Cir. 1996); *Johnson v. Alexander*, 572 F.2d 1219, 1223-24 (8th Cir. 1978). Moreover, the regulations of the Equal Employment Opportunity Commission ("EEOC") promulgated pursuant to Title VII incorporate the military exception by providing that the federal sector equal employment opportunity program does not apply to "[u]niformed members of the military departments." 29 C.F.R. § 1614.103(d)(1) (2003). Hedin does *not* challenge the "military exception"; he simply contends that CCPHS officers not engaged in any military service do not fall within that exception.

Prior to 1998, courts differed on this question. Some held that CCPHS officers, even if not engaged in military service, should be treated as military officers for purposes of the judicially-created military exception. *See Salazar v. Heckler*, 787 F.2d 527 (10th Cir. 1986).

---

[2]Title VII and the ADEA contain jurisdictional provisions that are, in relevant part, the same. Accordingly, for ease of reference, we refer hereafter just to Title VII.

Others rejected that conclusion. *See Milbert v. Koop*, 830 F.2d 354 (D.C. Cir. 1987); *Carlson v. HHS*, 879 F. Supp. 545 (D. Md. 1995).

In 1998, however, Congress enacted the Health Professions Education Partnerships Act, Pub. L. No. 105-392, 112 Stat. 3524 (1998), which amended provisions of the Public Health Service Act ("PHSA"), §§ 200 *et seq.*, 42 U.S.C. §§ 201 *et seq.* (2000). This amendment provides in pertinent part that "[a]ctive service of commissioned officers of the Service shall be deemed to be active military service in the Armed Forces of the United States for purposes of all laws related to discrimination on the basis of race, color, sex, ethnicity, age, religion, and disability." Pub. L. No. 105-392, § 402(a), 112 Stat. 3524, 3587-88 (1998), as codified at 42 U.S.C. § 213(f). Relying on this provision, the district court held that "the anti discrimination provisions of Title VII and ADEA" under which Hedin sought to recover did not apply to him and so granted the Government's motion to dismiss Hedin's complaint.

## II.

On appeal, Hedin argues, as he did before the district court, that § 213(f) applies only to those CCPHS officers, who, unlike himself, are engaged in active military service, which he defines as service undertaken by CCPHS officers who are "detailed to or . . . serving with the armed forces of the United States." Brief of Appellant at 10. Hedin maintains that, as a matter of statutory interpretation, the term "active service" in § 213(f) equates to "active military service."

We turn to the text of the statute to consider whether Hedin's non-military service as a CCPHS officer constitutes "active service" for purposes of § 213(f). A court "determine[s] whether the language at issue has a plain and unambiguous meaning" by looking to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). In this case, although the PHSA never expressly defines "active service," it is clear from the particular language of § 213(f) itself, the manner in which the term "active service" is used throughout the PHSA, and in the other subsections of § 213, that "active service" in § 213(f) does not equate to active military service, but includes all active service by CCPHS officers.

First, the language of § 213(f) itself requires this conclusion. Section 213(f) provides that "active service" of CCPHS officers "shall be *deemed to be* active military service in the Armed Forces." 42 U.S.C. § 213(f) (emphasis added). In mandating that one status is "deemed to be" another, Congress recognized that the two are not identical, and so expressly provided that one status was to be "considered" or "treated as if" the other. *See* Black's Law Dictionary 415 (6th ed. 1990). There would be no need for Congress to provide in § 213(f) that "active service" in the CCPHS "be deemed" "active military service" if the former actually equated to the latter.

Moreover, with regard to the broader context of the statute as a whole, the PHSA uses the term "active service" throughout the portion of the statute governing administration of the Public Health Service to refer to general, non-military service in the CCPHS. *See, e.g.*, 42 U.S.C. § 211(g)(3)(B)(ii)(2000) (indexing retirement pay to "the number of years of . . . active commissioned service in the Service"); *see also* 42 U.S.C. §§ 209(d)(3)-(4), 211(j)(1)-(2), 212(a)(3), 212(a)(4)(A)-(B), 212(a)(5), 212(f) (2000). When the PHSA addresses a certain kind of "active service," including military-type service, it expressly modifies the term "active service" to indicate this limitation. *See, e.g.*, 42 U.S.C. § 209(d)(3) (referring to "active service *in the Reserve Corps*") (emphasis added); § 211(j)(2) (referring to "active service *in such grade or any higher grade* in the Reserve Corps") (emphasis added); § 213(a) (referring to active service "*in time of war*," "*on detail for duty*" to the military, or "*while the Service is part of the military forces* of the United States") (emphases added).

That throughout the administration portion of the PHSA, unless specifically denominated to the contrary, the term "active service" means all (not just military) active service provides a compelling indication that the term "active service" as used in § 213(f) has a similarly broad meaning. *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."); *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (reciting the well-established proposition that "identical words used in different parts of the same act are intended to have the same meaning") (internal quotation marks omitted).

Ignoring both the specific language of § 213(f) ("shall be deemed to be") and the general use of "active service" throughout the PHSA,

Hedin focuses instead on the title of § 213 — "Military benefits" — and the way in which the term "active service" is used in other subsections of § 213. Specifically, Hedin contends that, consistent with its title, every subsection of § 213 provides military benefits, which Congress must therefore have intended would be extended only to CCHPS officers engaged in "active military service," *i.e.*, "*actively detailed and serving in the armed forces*." Brief of Appellant at 15 (emphasis in original). Thus, according to Hedin, the term "active service" as used in each of § 213's subsections, including § 213(f), must mean "active *military* service" to give effect to Congress' supposed intent to limit the receipt of military benefits to those engaging in military service.

Even adopting Hedin's focus and considering only the use of the term "active service" in the other subsections of § 213, this argument fails. First, although as Hedin argues, § 213(a)-(c) involve military-type service and subjects, subsections (b) and (c) never employ the term "active service" and so nothing can be gleaned about that term's meaning from those subsections.[3] Subsection 213(a) does use the term "active service," but it *expressly* modifies "active service" to make clear that the term is limited to certain military-type service. If Hedin were correct and "active service" in subsection (a), standing alone, equated to "actively detailed and serving in the armed forces," it would be unnecessary for the subsection to specify, as it does, that it applies only to "active service performed by [CCPHS officers] (1) *in time of war*; (2) *on detail for duty* with the Army, Navy, Air Force, Marine Corps, or Coast Guard; or (3) *while the Service is part of the military forces* of the United States pursuant to Executive order of the President." § 213(a)(emphasis added).

Furthermore, adopting Hedin's interpretation and equating "active service" to active military service in § 213(e)(extending benefits of the Soldiers' & Sailors' Civil Relief Act to CCPHS officers) would

---

[3]Subsection (c) refers back to subsection (a) by providing the Surgeon General with the authority to administer the "rights, privileges, immunities, and benefits referred to in subsection (a)." § 213(c). Subsection (b) provides that "[t]he President may prescribe the conditions under which commissioned officers of the Service may be awarded military ribbons, medals, and decorations." § 213(b).

render subsection (e) surplusage. This is so because § 213(a), by providing to CCPHS officers engaged in military service "all rights, privileges, immunities, and benefits now or hereafter provided under any law of the United States" already affords CCPHS officers engaged in military service the "privileges [and] immunities" of the Soldiers' & Sailors' Civil Relief Act. *See Wanner v. Glen Ellen Corp.*, 373 F. Supp. 983, 985-86 (D. Vt. 1974).

   Finally, we do not find Hedin's arguments based on the title of § 213, "Military benefits," and on the dearth of legislative history accompanying the enactment of § 213(f) persuasive. Such arguments simply cannot prevail over the overwhelming evidence in the statutory text and structure that the term "active service," standing alone and unmodified, does not equate to active military service. *See generally Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase.") (internal quotation marks and citation omitted) (alterations in original); *Ratzlaf*, 510 U.S. at 147-48 ("[W]e do not resort to legislative history to cloud a statutory text that is clear.").

   A court must attempt to interpret a statute so as to give each word meaning and to avoid creating surplusage. *Ratzlaf*, 510 U.S. at 140-41; *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment."), *superseded by statute as recognized in*, *Johnson v. Home State Bank*, 501 U.S. 78, 83 n.4 (1991). Here, by adopting the interpretation proposed by Hedin, we would render a significant portion of the statute — subsection (e) and "shall be deemed" in subsection (f) itself — without meaning.[4]

---

   [4]Adopting Hedin's interpretation would also disturb existing mechanisms for the redress of discrimination claims by CCPHS officers because both the EEOC and the HHS have organized their policies around an understanding that § 213(f) bars the application of Title VII and related antidiscrimination laws to CCPHS officers. Although shortly before the passage of § 213(f) the EEOC issued a decision announcing its belief that it had jurisdiction to regulate CCPHS officers under Title

Accordingly, we hold that the term "active service" as used in § 213(f) does not equate to active military service. Rather, § 213(f) applies to officers who, like Hedin, are generally engaged in active service as commissioned officers of the Public Health Service. Because § 213(f) requires that such service "be deemed" active military service in the Armed Forces and antidiscrimination laws do not apply to those engaged in active military service in the Armed Forces, neither Title VII nor the ADEA applies to CCPHS officers such as Hedin.

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

VII, *Guerard v. Shalala*, Appeal No. 01976658, 1998 WL 746307 (E.E.O.C. Sept. 24, 1998), the EEOC reversed course because it found that § 213(f) made it clear that CCPHS officers fall outside the scope of Title VII and that it was therefore *without* jurisdiction to regulate them. *See Eklund v. Thompson*, Appeal No. 01A00406, 2002 WL 31493438 (E.E.O.C. Oct. 30, 2002); *Raymond v. Shalala*, 101 F.E.O.R. 15611 (2000). HHS policy reflects a similar shift. After the passage of § 213(f), HHS repealed "Departmental decisions that members of the PHS Commissioned corps are covered by Title VII," substituted a policy providing for the processing of equal employment opportunity complaints by CCPHS officers through the equal opportunity provisions of the Commissioned Corps Personnel Manual, and declared that "as members of a Uniformed Service, commissioned officers are not covered by laws related to discrimination on the basis of race, color, sex, ethnicity, age, religion, and disability." Commissioned Corps Personnel Manual Instruction, Personnel Instruction 1—Equal Opportunity, 1999 WL 33310480 (Nov. 30, 2001). The parties do not cite to these agency actions and we do not treat them as binding; however, we note that to decide that CCPHS officers *are* within the reach of Title VII would upset the proverbial apple cart.