PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LILLIE M. MIDDLEBROOKS,
          *Plaintiff-Appellant,*

v.

MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES,
          *Defendant-Appellee.*

No. 05-1860

GEORGETOWN APPELLATE LITIGATION
CLINIC,
          *Amicus Supporting Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-04-2792-PJM)

Argued: December 4, 2007

Decided: May 6, 2008

Before MOTZ and DUNCAN, Circuit Judges, and
Leonie M. BRINKEMA, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed in part and vacated and remanded in part by published opinion. Judge Motz wrote the opinion, in which Judge Duncan and Judge Brinkema joined.

## COUNSEL

**ARGUED:** David Joseph Arkush, PUBLIC JUSTICE, Washington, D.C., for Amicus Supporting Appellant. Melanie L. Glickson, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Steven H. Goldblatt, Director, Ari Hershowitz, Student Counsel, Gregory J. Langlois, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Amicus Supporting Appellant. Rod J. Rosenstein, United States Attorney, Neil R. White, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

In her *pro se* complaint, Lillie M. Middlebrooks alleges that the Secretary of the United States Department of Health and Human Services ("HHS") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (2000) and 42 U.S.C. § 1981 (2000), in refusing to hire her. On the Government's motion, the district court dismissed Middlebrooks' complaint, holding that it lacked subject matter jurisdiction over her Title VII claim and that her § 1981 claim also failed. We affirm in part, but because the record provides insufficient support for critical elements of the district court's order, we also vacate and remand in part.

I.

In February and March 2003, Middlebrooks, an experienced, African-American registered nurse, applied for three nursing positions at the Warren Grant Magnuson Clinical Center, a program operated by the National Institutes of Health ("NIH"), an agency within HHS. Middlebrooks sought to fill an NIH nursing position as a commissioned officer of the United States Public Health Service Commissioned Corps ("PHSCC").

The PHSCC is one of the seven uniformed services of the United States military designated under 10 U.S.C. § 101(a)(4)-(5) (2000); other uniformed services include the five armed forces (Army, Navy, Air Force, Marine Corps, and Coast Guard) and the commissioned corps of the National Oceanic and Atmospheric Administration. *Id.* The PHSCC employs approximately 6,000 officers in a variety of medical health professions; those officers administer programs designed to promote public health, prevent disease, and advance public health science. *See* U.S. Dep't of Health & Human Servs., U.S. Pub. Health Serv. Commissioned Corps, About the Commissioned Corps, http://www.usphs.gov/aboutus/ (last visited Apr. 16, 2008).

PHSCC commissioned officers may serve in programs administered directly by the PHSCC, or they may serve in a variety of programs within HHS, such as the NIH, the Centers for Disease Control and Prevention, and the Food and Drug Administration. *See* U.S. Dep't of Health & Human Servs., U.S. Pub. Health Serv. Commissioned Corps, Agencies, http://www.usphs.gov/aboutus/agencies.aspx (last visited Apr. 16, 2008). Alternatively, they may seek employment in certain non-HHS federal agencies and programs, such as the Environmental Protection Agency and the National Park Service. *See id.* In order to serve in any programs other than those administered directly by the PHSCC, an individual must apply to, and be accepted by, *both* the PHSCC and the executive agency in which he or she wishes to work. Only if the PHSCC *and* the executive agency determine to hire an applicant can that applicant become a commissioned officer working within the specified executive agency. *See* U.S. Dep't of Health & Human Servs., U.S. Pub. Health Serv. Commissioned Corps, Overview of the Application Process, http://www.usphs.gov/applynow/#overview (last visited Apr. 16, 2008). Yet, when an applicant seeks to serve as a commissioned officer in an executive agency position that is not dedicated exclusively to the PHSCC, hiring officials within the executive agency assess the applicant's qualifications in a manner identical to the way in which they assess civilian candidates for that position. In fact, the applicant may be hired to serve in the executive agency position even if the applicant is not offered, or decides to decline, a position with the PHSCC.

In this case, after the executive agency in question, NIH, determined not to hire Middlebrooks, she filed a formal employment dis-

crimination complaint with the NIH Office of Equal Opportunity and Diversity Management. Middlebrooks complained that NIH officials discriminated against her because of her race when they failed to hire her for the first two positions to which she applied, and, after she complained of this discrimination, the officials retaliated against her by excluding her from consideration for a third position. HHS officials investigated the complaint and then issued a final decision concluding that no evidence supported Middlebrooks' race discrimination or retaliation claims.

Having exhausted her administrative remedies, Middlebrooks brought this action against the Secretary of HHS. She asserts a claim under Title VII, alleging discrimination on the basis of race and retaliation, as well as a claim under 42 U.S.C. § 1981, alleging intentional discrimination on the basis of race. Middlebrooks seeks monetary and injunctive relief for those asserted violations.

The Government moved to dismiss Middlebrooks' complaint, contending that the district court lacked subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The court granted the motion, reasoning that the "military exception" to Title VII exempted from Title VII protection both PHSCC commissioned officers and those *applying* to be PHSCC officers. The court then rejected Middlebrooks' claim under § 1981, because it concluded that "Title VII represents the exclusive remedy for federal sector employees who wish to pursue claims of intentional discrimination in employment."

Middlebrooks noted a *pro se* appeal. At our invitation, the Appellate Litigation Program of the Georgetown University Law Center filed amicus briefs on her behalf, which we very much appreciate.

We review *de novo* a dismissal for lack of subject matter jurisdiction. *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006). We first address Middlebrooks' Title VII claim and then consider her § 1981 claim.

II.

Title VII outlaws discrimination in employment based on race and

waives sovereign immunity with respect to claims for "personnel actions affecting employees or applicants for employment . . . in military departments . . . [and] in executive agencies . . . ." 42 U.S.C. § 2000e-16(a) (2000). Although the Supreme Court has not considered the question, numerous appellate courts, including this one, have concluded that uniformed members of the armed services do *not* constitute "employees . . . in military departments," *id.*, and so do not fall within the scope of the waiver of sovereign immunity contained in § 2000e-16.[1] *See, e.g.*, *Randall v. United States*, 95 F.3d 339, 343 (4th Cir. 1996) (holding that "Congress intended [in § 2000e-16] to include only civilian employees of the military departments, and not uniformed service members, within the reach of Title VII"). Courts have also concluded that Congress did not intend § 2000e-16(a)'s waiver of immunity to encompass applicants for enlistment in the uniformed armed services and therefore have held that applicants may not bring Title VII claims. *See, e.g.*, *Johnson v. Alexander*, 572 F.2d 1219, 1223-24 (8th Cir. 1978).

For several years, the federal appellate courts differed as to whether the § 2000e-16(a) waiver encompassed the PHSCC, or whether, like the armed forces, the PHSCC fell outside of the waiver's intended scope. *Compare Salazar v. Heckler*, 787 F.2d 527, 533 (10th Cir. 1986) (concluding that § 2000e-16(a) "did not extend the protections of Title VII . . . to commissioned officers, or to applicants for commissioned officer positions, in the Public Health Service"), *with Milbert v. Koop*, 830 F.2d 354, 359 (D.C. Cir. 1987) (holding that "the

---

[1]For the sake of convenience, courts have often described the exclusion of uniformed personnel in the armed forces from the scope of § 2000e-16(a) as the "military exception" to Title VII. *See, e.g.*, *Hedin v. Thompson*, 355 F.3d 746, 747-48 (4th Cir. 2004); *Doe v. Garrett*, 903 F.2d 1455, 1461 (11th Cir. 1990). That phrase may be misleading, because it may imply that § 2000e-16(a) initially waived sovereign immunity for all "military" employees, but *courts* created an *exception* to that *waiver* in order to eliminate otherwise valid Title VII claims for uniformed military personnel. As *Randall* makes clear, however, the *original scope* of the § 2000e-16(a) waiver in fact "includes only civilian employees of the Army, Navy, or Air Force." 95 F.3d at 343. This construction of § 2000e-16(a), which recognizes that Congress never waived sovereign immunity with regard to uniformed military personnel, does not, strictly speaking, constitute an "exception" to the statutory waiver.

'military exception' to Title VII . . . does not apply to a commissioned officer of the PHS").

Congress responded to this debate by enacting the Health Professions Education Partnerships Act of 1998, which added subsection (f) to 42 U.S.C. § 213 (2000). Pub. L. No. 105-392, § 402(a), 112 Stat. 3524, 3587-88 (codified at 42 U.S.C. § 213(f)). That provision states, in pertinent part, that "[a]ctive service of commissioned officers of the [PHSCC] *shall be deemed to be active military service in the Armed Forces* of the United States for purposes of all laws related to discrimination on the basis of race, color, sex, ethnicity, age, religion, and disability." *Id.* (emphasis added). In 2004, interpreting this legislation, we concluded that Congress intended to bar claims under the anti-discrimination laws for *all* PHSCC officers in active service, not merely those engaged in active *military* service. *Hedin v. Thompson*, 355 F.3d 746, 748, 750-51 (4th Cir. 2004).

Together, § 213(f), *Randall*, and *Hedin* make clear that Title VII claims by "commissioned officers of the [PHSCC]" are not cognizable, because those individuals are "deemed" uniformed officers of the military for purposes of anti-discrimination laws, and in § 2000e-16(a) Congress did not waive sovereign immunity for uniformed officers of the military. In the case at hand, the Government maintains, and the district court held, that Congress has similarly not waived sovereign immunity with respect to Title VII claims by PHSCC *applicants*, and, for this reason, Middlebrooks has no cognizable Title VII claim. We are the first appellate court to consider this question.

### A.

The Government initially contends that the "plain language of the statutes at issue" supports its view that Title VII remedies are not available to PHSCC applicants. The Government argues that because § 2000e-16(a) addresses *both* employees *and* "applicants" to military departments, § 213(f) must be read to apply to both PHSCC employees and applicants, as well. If the Government's reading of § 213(f) is correct, then, like PHSCC officers, applicants to the PHSCC would be beyond the scope of § 2000e-16(a). *See Randall*, 95 F.3d at 343; *Johnson*, 572 F.2d at 1223-24.

The statutory language simply does not support the Government's argument. While § 2000e-16(a) addresses both "employees" and "applicants for employment" in "military departments" and makes no distinction between these two groups of individuals, § 213(f) does not mention PHSCC "applicants." Rather, as we noted in *Hedin*, 355 F.3d at 748-51, § 213(f) clearly governs only PHSCC "commissioned officers" in "[a]ctive service." No plain language transforms mere applicants to the PHSCC into "commissioned officers" of the PHSCC. And given that PHSCC applicants have not (yet) received commissions, they certainly have not engaged in "[a]ctive service" in the PHSCC.

Thus, we conclude that, contrary to the Government's assertion, the plain language of the statutes at issue here does not mandate the conclusion that PHSCC applicants are barred from bringing Title VII claims. We take Congress at its word and assume, "as we must, that 'Congress says in a statute what it means and means in a statute what it says.'" *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 111 (4th Cir. 2006). Accordingly, we "refuse to venture beyond the confines of the statutory language," *id.*, to hold that this language bars PHSCC applicants from asserting Title VII claims. Rather, we conclude that the statute's silence on this issue means that § 213(f) does not encompass PHSCC applicants.

B.

Because § 213(f) does not bar Title VII claims by PHSCC applicants, we must return to the question that divided the circuits prior to the passage of § 213(f) — whether the PHSCC is included within the scope of the § 2000e-16(a) waiver of sovereign immunity. That is, we must determine if Congress intended applicants to the PHSCC to be treated as applicants to "military departments . . . [or] executive agencies," for whom it has waived sovereign immunity. § 2000e-16(a).

In *Randall*, we noted that "the term 'military departments' includes only *civilian* employees of the Army, Navy, or Air Force," and excludes uniformed military personnel. 95 F.3d at 343 (emphasis added). The PHSCC does not fall neatly within this dichotomy, however, as its members possess characteristics of both "civilian employees" and "uniformed military personnel." *Compare Salazar*, 787 F.2d at 530 (noting that PHSCC officers receive pay and allowances

according to the same statutory scheme as members of the armed forces, that they may purchase supplies from the armed forces at the same prices, and that the grades, ranks, and titles of commissioned PHSCC officers are organized in a manner corresponding to those in the Army), *with Milbert*, 830 F.2d at 358-59 (observing that, under 42 U.S.C. § 202 (2000), the PHSCC is an agency in HHS rather than a military department, that PHSCC officers are free to unilaterally terminate their status in the PHSCC, and that PHSCC officers are not subject to the Code of Military Justice unless the President so declares, pursuant to 42 U.S.C. § 217 (2000)).

Thus, the very nature of the PHSCC renders it difficult to determine whether it is an executive agency covered by the § 2000e-16(a) waiver, whose applicants can bring Title VII claims, or a uniformed military service not covered by the § 2000e-16(a) waiver, whose applicants cannot bring Title VII claims. Moreover, although statutory definitions of the "armed forces" do not include the PHSCC, *see, e.g.*, 10 U.S.C. § 101(a)(4); 5 U.S.C. § 2101(2) (2000), the PHSCC *is* consistently included within the slightly broader designation of "uniformed services," *see, e.g.*, 10 U.S.C. § 101(a)(5), 5 U.S.C. § 2101(3).

Despite these factors that make it difficult to classify the PHSCC, several reasons persuade us that Congress did *not* intend the § 2000e-16(a) waiver of sovereign immunity to cover the PHSCC, and so applicants to the PHSCC cannot bring Title VII claims. First, although the PHSCC shares characteristics of both civilian and military personnel, the legislative history of § 2000e-16(a) suggests that, in passing the amendment to Title VII that added this provision, Congress intended § 2000e-16 to reach only federal employees in the "civil service" and "competitive service" who were, at that time, under the authority of the Civil Service Commission. *See Salazar*, 787 F.2d at 531-33 (explaining that Congress sought to redress "a general dissatisfaction with the Civil Service Commission's performance in implementing the national policy of equal employment opportunity"); *see also Gonzalez v. Dep't of Army*, 718 F.2d 926, 928 (9th Cir. 1983). The PHSCC is, however, explicitly excluded from the operation of the civil service laws, *see* 42 U.S.C. § 204 (2000), and from the competitive service, *see* 5 U.S.C. §§ 2101, 2102 (2000). *See Salazar*, 787 F.2d at 530-31. Thus, we agree with the Tenth Circuit that Congress did not intend § 2000e-16(a) to extend Title VII protections

"to commissioned officers, or *to applicants* for commissioned officer positions, in the [PHSCC]." *Id.* at 533 (emphasis added).

Second, rules of statutory construction dictate that waivers of sovereign immunity "must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992) (internal quotations, alterations, and citations omitted); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . . . The terms of consent to be sued may not be inferred, but must be unequivocally expressed." (internal quotations and citations omitted)). The debate as to whether § 2000e-16(a) includes the PHSCC indicates the absence of any "clear statement . . . waiving sovereign immunity" for claims by PHSCC officers and applicants. *See White Mountain Apache Tribe*, 537 U.S. at 472.

Finally, unlike the courts that initially considered the question of whether § 2000e-16(a) extended to the PHSCC, *e.g.*, *Salazar*, 787 F.2d at 533; *Milbert*, 830 F.2d at 359, we are aided by the passage of 42 U.S.C. § 213(f); thus, we endeavor to construe § 2000e-16(a) in light of Congress's intentions in enacting § 213(f). *See Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 837 (2008) (reasoning that, although an amendment to the statute at issue did not govern the petitioner's claim, "the amendment is relevant because our construction [of the statutory text] . . . must, to the extent possible, ensure that the statutory scheme is coherent and consistent"). Although the plain language of § 213(f) speaks only to "active service of commissioned officers," we believe that it does evince Congress's general intent to align the PHSCC with the armed forces rather than with civilian employment for purposes of employment discrimination remedies.

For these reasons, we conclude that the waiver of sovereign immunity granted by § 2000e-16(a) does not encompass the PHSCC. Therefore, neither commissioned officers nor applicants to the PHSCC may bring claims under Title VII.

## C.

This legal conclusion does not, however, resolve the question of whether Middlebrooks may bring a cognizable Title VII claim. This

is so because of the nature of the unique hiring process for PHSCC commissioned officers, which requires formal approval by *both* the PHSCC *and* an executive agency. The vagaries in this hiring process create a factual question as to whether to characterize the application from which Middlebrooks' claims arise as one to the PHSCC — in which case she may not pursue a Title VII claim for the personnel actions at issue — or one to the NIH — in which case she may pursue such a remedy against NIH hiring officials, because Congress has waived sovereign immunity for claims arising from "personnel actions affecting . . . applicants for employment . . . in *executive agencies*." § 2000e-16(a) (emphasis added).

For example, the Government has submitted that some executive agency assignments are designated as PHSCC positions under the statutory appointing authority provided by Title 5 of the United States Code. According to the Government, when a PHSCC candidate applies to a Title 5 position, that individual is exempt from the competitive process required of civilian applicants and automatically added to the list of eligible candidates for consideration. If not approved by the PHSCC for commissioning, the individual's parallel application to the Title 5 executive agency position apparently is automatically rejected. When applicants seek to fill positions like this, their executive agency applications are better characterized as merely one element of the larger PHSCC hiring process, for which no Title VII remedies are available.

But the Government has additionally submitted that some executive agency assignments for PHSCC candidates are available under the very different statutory authority of Title 42. According to the Government, applicants to Title 42 positions are *not* exempted from the competitive process required of civilian applicants; rather, executive agency officials assess their applications in the same manner that they assess all other applications. In such cases, the executive agency and the PHSCC applications *may* be sufficiently distinct and independent to make Title VII remedies available for discriminatory personnel actions occurring solely within the executive agency application process. But, even with respect to these applications, the timing of the PHSCC approval process and the amount of discretion that process affords PHSCC hiring authorities may foreclose such remedies. If for instance (as the Government alleges here), the PHSCC has "pre-

approved" an applicant at the time the executive agency considers the application, then the applicant would essentially be a *de facto* member of the PHSCC for purposes of her executive agency application and thus would not be permitted to pursue Title VII remedies under § 2000e-16(a). If, however, the PHSCC does not begin consideration of an applicant until an executive agency has accepted the applicant, or the PHSCC retains discretion to reject an applicant regardless of approval by an executive agency, then the applicant would *not* be a *de facto* member of the PHSCC for purposes of the executive agency application. Rather, as a civilian applicant, she would be entitled to pursue Title VII remedies against the executive agency hiring officials.

Although it is clear in this case that the personnel action Middlebrooks challenges occurred within the civilian agency, we cannot determine from the record whether her application to the NIH is better characterized as merely one element of the larger PHSCC hiring process or whether her application to the NIH was truly independent from the PHSCC hiring process.[2] If the nursing positions to which Middlebrooks applied were designated for commissioned PHSCC officers, then Middlebrooks' application is best characterized as one to the PHSCC. Accordingly, she would lack a Title VII claim under § 2000e-16(a) with regard to any hiring decision related to those positions. But if the NIH vacancies were not designated for commissioned officers and could be filled by civilians, *and* if the PHSCC retained discretion to reject applicants regardless of their approval by the NIH (that is, if Middlebrooks was not yet a *de facto* member of the PHSCC), then Middlebrooks' application is better characterized as one to NIH. Under those facts, the decision by NIH officials to reject Middlebrooks' application would be sufficiently distinct from the PHSCC application process that she could be characterized as a civilian applicant to an executive agency for purposes of § 2000e-16(a),

---

[2]At our request, the Government filed a letter with us responding to certain questions about the facts raised at oral argument. That letter seems to indicate that the positions for which Middlebrooks applied were not designated PHSCC positions but rather could be filled by civilians. The district court, however, has had no opportunity to consider this information or other facts relevant to construing Middlebrooks' application; thus, remand is appropriate.

and thus she could assert a Title VII claim against the NIH hiring officials.

We therefore vacate the judgment of the district court on Middlebrooks' Title VII claim and remand for the court to determine how best to characterize Middlebrooks' application. Should the court determine that it is properly viewed as one to the PHSCC, then Middlebrooks may not assert a claim under § 2000e-16(a). But if the court determines that the application is better viewed as one to NIH, then it should deny the Government's motion to dismiss and permit Middlebrooks to proceed on her Title VII claim against NIH hiring officials under § 2000e-16(a).

III.

In addition to her Title VII claim, Middlebrooks also asserts a discrimination claim under 42 U.S.C. § 1981. That statute does not, however, provide a remedy against federal officials. *See* § 1981. Amicus, arguing on behalf of Middlebrooks, urges us to construe Middlebrooks' § 1981 claim as a Fifth Amendment claim properly lodged against NIH officials in their individual capacities or, alternatively, to instruct the district court to allow Middlebrooks to amend her complaint to assert a Fifth Amendment claim against those officials. Because neither course would afford Middlebrooks an opportunity for relief, we adopt neither; instead, we affirm the judgment of the district court dismissing this claim.[3]

If the district court should conclude that Middlebrooks has a cognizable claim against NIH officials under Title VII, then Title VII represents Middlebrooks' exclusive remedy for any claim against the United States for intentional discrimination in employment. *See Davis v. Passman*, 442 U.S. 228, 247 n.26 (1979); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). Thus, if the district court construes

---

[3]Because we reject on other grounds the contention that Middlebrooks might succeed on a claim under the Fifth Amendment, we need not address the Government's assertion that the PHSCC administrative review mechanisms afford meaningful redress for Middlebrooks' claims and therefore foreclose the need for a new, judicially-crafted cause of action.

Middlebrooks' application as one to the NIH, and she is therefore permitted to bring a Title VII claim against NIH hiring officials under § 2000e-16(a), then she may not also proceed on a Fifth Amendment claim against those officials based on the same, allegedly discriminatory conduct.

Even if the district court concludes that Middlebrooks' application is better characterized as one to the PHSCC, and therefore § 2000e-16(a) does not waive sovereign immunity for her claims, Middlebrooks would still lack a cognizable claim under the Fifth Amendment. In *Davis*, the Supreme Court implied a Fifth Amendment cause of action for damages when a federal employee claimed gender-based discrimination in employment. 442 U.S. at 242-44. The Court did so in reliance on its earlier opinion in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), in which it held that a citizen who suffers injury to a constitutionally protected interest at the hands of federal officials may have a cognizable claim against those officials in their individual capacities.

The Supreme Court has instructed that a *Bivens* remedy is not available, however, when "special factors counsel[ ] hesitation." *Id.* at 396. The Court has also held that the need to avoid "congressionally uninvited intrusion into military affairs by the judiciary" constitutes one of those "special factors." *United States v. Stanley*, 483 U.S. 669, 683 (1987).[4] In this case, should the district court determine that Middlebrooks' application is best characterized as one to the PHSCC, then, because we believe that the statutory scheme evinces congressional intent to align the PHSCC with the armed forces, and members of the armed forces would lack a *Bivens* remedy for discrimination claims arising out of military employment, Middlebrooks also would have no *Bivens* remedy against NIH officials. *See Chappell v. Wal-*

---

[4]The Court first recognized the compelling rationale for protecting the Government from suits by uniformed members of the military for injuries that "arise out of or are in the course of activity incident to service" in *Feres v. United States*, 340 U.S. 135, 146 (1950). As the Court later suggested, the "peculiar and special relationship of the soldier to his superiors," and "the effects of the maintenance of such suits on discipline," animate the *Feres* doctrine. *United States v. Brown*, 348 U.S. 110, 112 (1954).

*lace*, 462 U.S. 296, 298-304 (1983) (holding that recognizing a *Bivens* claim against Navy officers would undermine military decisions); *see also Stanley*, 483 U.S. at 679-84 (holding that "special factors" counseling against a *Bivens* remedy may exist even when the claim asserted is against civilian personnel, so long as military affairs are implicated). And if Middlebrooks has no cognizable *Bivens* claim against NIH officials, then *Davis* affords no right of action under the Fifth Amendment.[5] *See* 442 U.S. at 243-44.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED IN PART AND VACATED*
*AND REMANDED IN PART.*

---

[5]Amicus argues that even if Middlebrooks may not proceed on her Title VII or her Fifth Amendment claims, the district court still has jurisdiction over her claim for equitable relief. Because Middlebrooks' initial complaint names only the Secretary of HHS as a defendant, Amicus asks us to direct the district court to permit Middlebrooks to amend her complaint to assert a claim for injunctive relief against the relevant NIH hiring officials in their individual capacities. Our sister circuits have divided on the question of whether an individual can seek equitable relief for alleged constitutional violations arising in the context of military personnel decisions. *Compare Dibble v. Fenimore*, 339 F.3d 120, 126-28 (2d Cir. 2003), *with Wigginton v. Centracchio*, 205 F.3d 504, 513 (1st Cir. 2000). Since the district court did not address the question and the parties have not thoroughly briefed it, we do not address the issue now. Of course, the district court may do so on remand if Middlebrooks presents the issue.